

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**MAR 2 0 2026**

KEVIN P. WEIMER, Clerk
By:
Matthew H— Deputy Clerk

# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREN TAYLOR, Adult Ward through her Guardian and Conservator, Elaine Taylor, and ELAINE TAYLOR, Individually <br>        Plaintiffs, <br> vs. <br><br> JOHN INGRAM, <br> JOHN & STEPHANIE INGRAM, LLC, <br> AMERICAN ZURICH INSURANCE COMPANY, <br> ESIS, INC. <br> PARADIGM, INC. <br> JOHN BARRINGER, <br> M. STEELE CANTEY, <br> MANIER & HEROD, LLC, <br> SHEPHERD CENTER, INC. <br> JUDGE KENYA JOHNSON, <br> WILLIAM JENKINS, <br> BRYNDIS ROBERTS, <br> JENKINS & ROBERTS, LLC, <br> DANA ASHFORD, <br> THE ASHFORD LAW FIRM, LLC, <br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Complaint for a Civil Case <br><br> Case No.:  1:26 -CV- 1545 <br><br> JURY TRIAL DEMANDED |

1

## PLAINTIFFS' COMPLAINT

COME NOW, Plaintiffs Lauren Taylor, Adult Ward, by and through Elaine Taylor, the conservator and guardian for Lauren Taylor, and Elaine Taylor, Individually, *Pro se,* and plead as follows:

### JURISDICTION AND VENUE

1. Plaintiffs bring this complete diversity lawsuit pursuant to 28 U.S.C. § 1332 and plead that each Plaintiff reasonably requests more than $100,000 in damages.

2. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and at least one Defendant resides in this District.

3. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

4. This Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(a).

### PARTIES

#### PLAINTIFFS

5. Plaintiff, Elaine Taylor ("Elaine"), is a natural person and lifelong citizen of Missouri and the United States of America, residing in St. Charles County, Missouri.

   a. Elaine brings this action individually and, as applicable, as the guardian and conservator of Lauren Taylor.

6. Plaintiff, Lauren Taylor, Adult Ward ("Lauren"), is an incompetent adult who is a lifelong citizen of Missouri and the United States of America, residing in St. Charles County, Missouri.

   a. At all times pertinent hereto, Lauren has been subject to a guardianship and conservatorship proceedings initiated by Elaine in June of 2019 in Fulton County Probate Court, State of Georgia ("FCPC"). Case No. PC-2019-001723; *See also In re Estate of Taylor,* 922 S.E.2d 476, 479 (Ga. App. 2025).

   b. All references to "Lauren" on or after May 12, 2019, are to her as an incompetent adult, being represented in these proceedings through Elaine Taylor, her guardian and conservator, and not intended to negate or change her legal status as an incompetent adult ward.

2

c.  At all times pertinent hereto, Lauren has been unemancipated in the State of Missouri pursuant to judgments in the Circuit Court of St. Charles County. Elaine has retained full custody over Lauren.

## DEFENDANTS

The below-named Defendants are liable in that they caused or contributed to cause Plaintiffs' injuries:

7. INGRAM.

    a.  Defendant, John Ingram, is a foreign (Tennessee) resident.

    b.  Defendant, John & Stephanie Ingram, LLC, is a foreign (Tennessee) Limited Liability Company, incorporated in Tennessee with a principal place of business (horse farm) in Florida. Upon information and belief, Defendant John & Stephanie Ingram, LLC, is solely owned and operated by Defendant John Ingram. John & Stephanie Ingram, LLC, maintains the ownership and expenses of the Ingram family amateur hobby horses and is "not in business for profit or gain."

    c.  John Ingram and John & Stephanie Ingram, LLC, (collectively, "Ingram") may be served pursuant to the Georgia Long-Arm Statute at 4400 Harding Pike Ste 310, Nashville, TN 37205.

    d.  Ingram purposefully and knowingly directed their actions in the State of Georgia.

    e.  Defendants Ingram are sued individually and as willful participants in joint action with American Zurich Insurance Company and Georgia state actors.

8. ZURICH.

    a.  Defendant, American Zurich Insurance Company ("Zurich"), is a foreign (Illinois) company doing business in the State of Georgia.

    b.  Zurich may be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

    c.  Zurich purposefully and knowingly directed its actions in the State of Georgia.

    d.  Zurich is a private insurer engaged in insuring employers' workers' compensation claims and administering and settling claims, including Lauren's workers' compensation claim, and is sued in its individual capacity and as a willful participant in joint action with Ingram and Georgia state actors.

3

9. ESIS.

    a.    Defendant, ESIS, Inc. ("ESIS"), is a foreign (Pennsylvania) corporation doing business in the State of Georgia. It is a subsidiary of Chubb Insurance.

    b.    ESIS may be served through its registered agent, C T Corporation System at 1201 Peachtree Street, NE, Atlanta, GA 30361.

    c.    ESIS purposefully and knowingly directed its actions in the State of Georgia.

    d.    ESIS is a private third-party claims adjuster, engaged in administering and settling claims, including Lauren's workers' compensation claim, and is sued in its individual capacity and as a willful participant in joint action with Georgia state actors.

10. PARADIGM.

    a.    Defendant, Paradigm, Inc. ("Paradigm"), is a foreign (California) corporation doing business in the State of Georgia.

    b.    Paradigm may be served pursuant to the Georgia Long-Arm Statute at 1277 Treat Blvd, Suite 800, Walnut Creek, CA 94597.

    c.    Paradigm purposefully and knowingly directed its actions in the State of Georgia.

    d.    Paradigm is a private care management provider, engaged in assisting ESIS/Zurich/Ingram to provide required health care and life management needs to injured persons and in administering and settling claims, including Lauren's workers' compensation claim, and is sued in its individual capacity and as a willful participant in joint action with Georgia state actors.

11. BARRINGER.

    a.    Defendant, John Barringer, is a foreign (Tennessee) resident, and at all times pertinent hereto, an attorney working for the law firm, Manier & Herod, LLC. John Barringer is licensed as an attorney in Tennessee. On or about June 10, 2021, John Barringer requested and on July 21, 2021, was granted *pro hoc vice* admission to participate in Lauren's guardianship and conservatorship in the Fulton County Probate Court, State of Georgia.

    b.    Defendant, M. Steele Cantey, is a foreign (Tennessee) resident, and at all times pertinent hereto, an attorney working for the law firm, Manier & Herod, LLC. M.

Steele Cantey is a licensed attorney in both Georgia (Ga. Bar no. <u>288406</u>) and Tennessee.

c. Defendant, Manier & Herod, LLC, is a foreign (Tennessee) company, incorporated in Tennessee with a principal place of business in Tennessee.

d. John Barringer & M. Steele Cantey, at all times pertinent hereto acted within course and scope of employment, service and/or agency with Manier & Herod, LLC.

e. Defendants John Barringer, M. Steele Cantey, and Manier & Herod, LLC, may be served pursuant to the Georgia Long-Arm Statute at 1201 Demonbreun Street, Ste 900, Nashville, TN 37203.

f. Defendants John Barringer, M. Steele Cantey, and Manier & Herod, LLC, are hereinafter collectively referred to as "Barringer" unless otherwise specified.

g. Barringer purposefully and knowingly directed their actions in the State of Georgia.

h. Barringer are lawyers and a law firm, engaged in litigating, administering and settling claims for employers, including Lauren's workers' compensation claim, and each is sued in its individual capacity, as applicable, and as a willful participant in joint action with Georgia state actors.

12. INGRAM/ZURICH/BARRINGER/ESIS/PARADIGM.

a. Ingram and/or Zurich contracted with ESIS as their claims adjuster.

b. Ingram, Zurich, and/or ESIS contracted with Paradigm to provide catastrophic care management for Lauren for Ingram/Zurich/ESIS.

c. Paradigm has various contractual relationships with physicians, hospitals, and care facilities across the country wherein Paradigm provides a competitive advantage to their contracted medical providers with guarantees of timely full payment with no regional competition. This includes the treating physicians and facilities chosen by Ingram/Zurich/ESIS/Paradigm for Lauren in Missouri (Dr. Wolf), in Nebraska (Dr. Kult/Quality Living, Inc.), and in Georgia (Dr. Dennison/Shepherd)—and have the ability to exclude the patient and patient's advocates (family, guardian, conservator) from care plan meetings, influence the patient's medical care plan, including incentivizing or compelling the treating physician to order step down care, to delay

5

neuropsychological testing, to prohibit or delay providers from sharing medical records and results with the patient, and similar type acts that are not in the patient's best interests.

d.   Defendants Ingram, Zurich, and ESIS were represented by Defendants Barringer throughout the state court proceedings in both the Tennessee courts related to Lauren's workers' compensation claim and the Georgia courts related to Lauren's guardianship and conservatorship proceedings. To the best of Plaintiffs' knowledge, Defendants Barringer also represented Paradigm. Those eight Defendants (John Ingram, John & Stephanie Ingram, LLC, Zurich, John Barringer, M. Steele Cantey, Manier & Herod, LLC, ESIS, and Paradigm) acted as a single unit. All eight Defendants purposefully concealed their actions from Plaintiffs and acted in concert to achieve a common goal. Plaintiffs cannot reasonably differentiate between each Defendant's acts. As such, all above named eight Defendants will be called "Ingram/carrier" and each is liable for the actions complained of below.

13. SHEPHERD CENTER.

a.   Defendant, Shepherd Center, Inc. ("Shepherd"), is a Georgia corporation doing business in the State of Georgia.

b.   Shepherd operates a healthcare facility and is sued in its individual capacity and as a willful participant in joint action with state actors.

c.   Shepherd may be served at 2020 Peachtree Rd N.W., Atlanta, GA 30309.

14. FCPC JUDGE KENYA JOHNSON.

a.   Defendant, Kenya Johnson, is a Georgia resident and, at all times pertinent hereto, the Chief Judge of the Fulton County Probate Court, State of Georgia. She will hereinafter be referred to as "Judge Johnson."

b.   The FCPC is a court of limited jurisdiction which only has jurisdiction when authorized by statute or the Georgia Constitution.

c.   Judge Johnson is sued in her individual capacity for damages for acts taken in the absence of any jurisdiction.

d.   Judge Johnson may be served at 136 Pryor St. SW Atlanta, GA 30303.

6

15. JENKINS.

    a.    Defendant, William Jenkins, is a Georgia resident and an attorney, licensed in the State of Georgia. He was at all times pertinent hereto a county conservator for the FCPC and a partner with the law firm of Jenkins & Roberts, LLC. At all times pertinent hereto he acted within the course and scope of employment, service and/or agency of Jenkins & Roberts, LLC. Jenkins was purportedly appointed as county conservator of Lauren's property and is sued in his individual and official capacity.

    b.    Defendant, Bryndis Roberts, is a Georgia resident and an attorney, licensed in the State of Georgia. She was at all times pertinent hereto a partner with the law firm Jenkins & Roberts, LLC. At all times pertinent hereto she acted within the course and scope of employment, service and/or agency of Jenkins & Roberts, LLC. Roberts assisted Jenkins in his purported appointment as conservator of Lauren's property and is sued in her individual capacity.

    c.    Defendant, Jenkins & Roberts, LLC, is a Georgia company and law firm owned and operated by William Jenkins and Bryndis Roberts.

    d.    Defendants William Jenkins, Bryndis Roberts, and Jenkins & Roberts, LLC, may be served at 3427 Main Street, College Park, GA 30337.

    e.    Defendants William Jenkins, Bryndis Roberts, and Jenkins & Roberts, LLC, are hereinafter collectively referred to as "Jenkins."

16. ASHFORD.

    a.    Defendant, Dana Ashford, is a Georgia resident and an attorney, licensed in the State of Georgia. She is also a Guardian ad Litem ("GAL") for the FCPC.

    b.    Defendant, The Ashford Law Firm, LLC, is a Georgia company and law firm owned and operated by Dana Ashford. At all times pertinent hereto, she acted within the course and scope of employment, service and/or agency of Defendant, The Ashford Law Firm, LLC.

    c.    Defendants Dana Ashford and The Ashford Law Firm, LLC, may be served at 160 Clairemont Ave, Ste 450, Decatur, GA 30030.

    d.    Defendants Dana Ashford and The Ashford Law Firm, LLC, are hereinafter collectively referred to as "Ashford."

7

e.  GAL Ashford was appointed on a limited basis as GAL in Lauren's matter and is sued in her individual and official capacity.

## TOLLING OF LIMITATIONS

17. Any applicable limitations periods are tolled by equitable tolling, fraudulent concealment, continuing violation doctrine, and/or the Ward's legal incapacity which has been under the continuing and exclusive jurisdiction of the FCPC since 2019.

18. On September 26, 2024, Plaintiffs filed a substantially similar complaint to this one with the United States District Court for the Eastern District of Missouri, Eastern Division, Case No. 4:24-CV-1303-MTS. On September 22, 2025, that case was dismissed without prejudice for lack of personal jurisdiction over the Defendants herein.

19. Alternatively, all statutes of limitation for Plaintiffs' causes of action have been tolled since at least September 26, 2024. O.C.G.A. § 9-2-61.

## INTRODUCTION

20. On May 12, 2019, Lauren Taylor ("Lauren") was kicked in the head by a horse allegedly owned by Ingram while working for Oasis, a Florida company, and/or Ingram, while at a horse show in South Carolina. Lauren was taken, comatose, to Augusta, Georgia, for treatment in Shock Trauma ICU for 12 days. She was then transported while comatose via medic plane to Shepherd Center in Atlanta, Georgia, for acute brain injury treatment.

21. While in Atlanta to be with her daughter, Elaine Taylor ("Elaine") initiated guardianship and conservatorship proceedings in the Fulton County Probate Court, State of Georgia ("FCPC"), in June of 2019. Ingram/carrier immediately began undermining Elaine's ability to advocate for Lauren's best interests in order to minimize their financial obligations to Lauren for an injury that has left her permanently and totally disabled.

22. This civil action arises from Defendants coordinated deprivation of Lauren Taylor's property and liberty without jurisdiction and/or without due process in concert with Georgia state actors (FCPC's Judge Kenya Johnson; FCPC's Judicial Hearing Officers Julie Caplan, Barbara Koll, Marian Parker; Georgia Department of Human Services, Advocate Yvette McAdams; FCPC's county conservator, William Jenkins, and/or FCPC's Guardian ad Litem, Dana Ashford). Acting under color of state law and/or in concert with state actors, Defendants seized and disposed of Lauren's assets (workers' compensation claim and significant bank account funds) and forcibly confined and

8

transported Lauren across state lines (Georgia to Nebraska) without a valid court order, adequate notice, or a meaningful opportunity for Lauren and/or Elaine to be heard—simultaneously depriving Lauren of needed medical care and disability benefits.

23. Defendants later coerced Elaine to move Lauren across state lines (Nebraska to Missouri), leaving Lauren without required medical care, home modifications, and equipment since May 2, 2020, and without disability benefits since October 17, 2019—thereby either forcing Elaine to provide for all of Lauren's significant medical care needs and living expenses or forcing Lauren to do without. Elaine has not been able to work as a result.

24. Defendants exploited and abused Lauren—a vulnerable individual as a member of a protected, regularly discriminated against class of disabled, severely brain injured persons (disabled individuals)—for financial gain and/or political favor. Defendants further exploited Elaine, as a single mom, stating that if Elaine refused to take Lauren home to Missouri, Defendants would *permanently* transfer Lauren to a facility in Illinois, where Lauren would have no nearby friends or family. Defendants made these threats at the beginning of COVID when the facility was under lockdown and Lauren would not be allowed any visitors. Lauren would neither be able to receive needed therapies nor reintegrate into a community—activities that Lauren's treating physician deemed important to Lauren's recovery and independence. Fearful for Lauren's life and recovery, Elaine took Lauren home.

25.  Defendants conspired to temporarily suspend Elaine as Lauren's guardian and/or conservator and to seize "temporary" fiduciary control of Lauren with eleven temporary suspensions and temporary substitute appointments that spanned nearly three years. Each temporary suspension and temporary appointment was entered without adequate notice or a meaningful opportunity for Lauren and/or Elaine to be heard.  Elaine continually advocated for Lauren. Ingram/carrier insisted on drastic cost-savings plans that were clearly not in Lauren's best interest.

26. Defendants maliciously used the probate court's guardianship and conservatorship proceedings to suspend Elaine as Lauren's guardian and conservator and retain temporary fiduciary control of Lauren long enough to accomplish an improper purpose—fully settling Lauren's workers' compensation claim in Tennessee, place all of Lauren's

settlement proceeds in insolvent special needs trusts in Florida, and ostensibly allowing the statutes of limitations to expire, thereby allegedly preventing Plaintiffs from setting aside and/or appealing certain detrimental orders that disposed of Lauren's significant assets for drastically less than their value.

27. Defendants, including state actors, deprived Lauren of her right to appeal orders entered by the FCPC and to participate in her own decision making to the extent she was able, as was her right under Georgia guardianship law.

28. Defendants, including state actors, threatened Plaintiffs with Defendants' collective ability to move Lauren across state lines, to delay and withhold Lauren's needed medical and therapeutic care, to withhold Lauren's needed disability payments, and to prevent Lauren from accessing her bank account that primarily consisted of donations that were intended to assist with Lauren's recovery.

29. Defendants, including state actors, further acted with knowledge that the FCPC would continue to deprive both Lauren and Elaine of due process, adequate notice, or meaningful opportunity to be heard. Defendants prevented Lauren and Elaine from challenging Ingram/carrier's misrepresentations. Defendants, including state actors, made implicit and blatant threats of criminal prosecution of Elaine if Elaine challenged any of their actions or the existing court orders, including the workers' compensation settlement orders, with lawsuits or appeals.

30. Plaintiffs seek redress under 42 U.S.C. § 1983 and, where applicable, 42 U.S.C. § 1985(3), for violations of the Due Process Clause of the Fourteenth Amendment and related federal rights, and assert supplemental Georgia law claims including false imprisonment, conversion (trover), civil conspiracy, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence per se based on violations of Georgia guardianship statutes, unjust enrichment/constructive trust, intentional infliction of emotional distress, and abuse of process. At significant times, state actors claimed to have authority to act on Lauren's behalf but had no such authority and/or had no jurisdiction to act or enter orders. Plaintiffs also seek punitive damages to the extent they are available and declaratory and prospective injunctive relief to the extent they are needed, damages, and attorney and/or conservator/guardian fees under 42 United States Code Section 1988.

10

## FACTUAL ALLEGATIONS

### I.    General Background

31. In April of 2018, Ingram offered and Lauren accepted a job grooming and riding horses. Ingram provided benefits to Lauren in addition to a basic wage including, but not limited to: tips, travel/food money, bonuses, and room and board.

32. From April of 2018, through January of 2019, Lauren worked full time for Ingram.

33. In January of 2019, at Ingram's direction, Lauren also began working for co-employer, Oasis Outsourcing, Inc. ("Oasis"), a Florida corporation.

34. From January of 2019, through May 12, 2019, Lauren worked full-time for the co-employers and was paid by and provided benefits from co-employers Ingram and Oasis.

35. On May 12, 2019, Lauren was kicked by a horse while working at a horse show in South Carolina for co-employers Ingram and Oasis, resulting in a catastrophic brain injury, broken nose, bruised lung, and other related physical injuries. Lauren was emergently transported in an ambulance to a shock trauma ICU in Augusta, Georgia. Elaine left Plaintiffs' home in Missouri to stay with Lauren.

36. Lauren was comatose and has no memory of the accident.

37. Upon information and belief, Ingram owned the horse that kicked Lauren.

38. Immediately after Lauren's injury, and without Plaintiffs' knowledge or consent, Barringer initiated Lauren's workers' compensation claim in Tennessee on behalf of his clients, John & Stephanie Ingram, LLC, as Employer, and Zurich, as the insurer.

39. Barringer filed Tennessee Form C-41, Wage Statement, including only approximately $950 per week of wages from Oasis, the Florida co-employer, in determining Lauren's weekly workers' compensation disability benefits of approximately $600. They specifically excluded all wages and benefits from Ingram, approximately another $1,000 per week, greatly reducing the weekly amount Lauren is entitled to for over 2,500 weeks of compensation.[1]

40. John Ingram told Elaine that he would pay the difference between Lauren's regular weekly rate and what she was receiving as a disability benefit, so that Lauren would receive her

---

[1] Under Tennessee law, Lauren should have received approximately $1,022 per week in temporary disability benefits from May 12, 2019, through at least August 24, 2021, or approximately $120,000. She received approximately $10,000.

Lauren should have received approximately $929 per week in permanent disability benefits since August 24, 2021, and for approximately 2,500 weeks—approximately $220,000 to date. She has received $0.00.

11

full weekly rate. Ingram specifically stated that he would pay Lauren $302.22 per week. To date, he has not paid a single dollar.

41. John Ingram set up and published a GoFundMe on social media site(s) to help Elaine with costs for Lauren's recovery. Ingram stated that he would match the first $50,000 in donations. To date, he has failed to match those donations.

42. Throughout Barringer's Georgia court filings on behalf of Zurich in the FCPC, Georgia Court of Appeals, and the Georgia Supreme Court, from April of 2020, through 2026, Barringer alleged that Zurich is "the insurer for Lauren's former employer" and that Zurich was treating Lauren's May 12, 2019, catastrophic brain injury as a work-related injury compensable by Zurich—without ever stating *who* Lauren's employer is by name.

43. Plaintiffs, to date, have not been provided with an insurance policy or declaration indicating which employer(s) were named insureds under the Zurich policy.

44. On May 24, 2019, a medic plane took Lauren (still in a coma) and Elaine from the hospital in Augusta, Georgia, to Shepherd Center in Atlanta, Georgia.

45. Lauren's treating physicians at Shepherd stated the first twelve months of rehabilitation are the most crucial in determining Lauren's future quality of life. The next twelve months are less crucial, but significant. After twenty-four months, the gains are minimal, take longer, and only occur through significant and consistent therapies.

46. On or about May 31, 2019, there was an initial care plan meeting regarding Lauren. Elaine, Lauren's brother, and Lauren's grandparents were allowed to attend, but were specifically excluded from attending any of the other weekly care plan meetings for Lauren. Ingram/carrier had a representative flown into each and every care plan meeting and provided Elaine with a "need-to-know" (limited) update following most meetings.

47. In June of 2019, Ingram/carrier's medical team recommended that a baclofen pump be surgically implanted into Lauren's abdomen to disperse baclofen medication directly to her lower body. If properly implanted, the baclofen pump could have improved and quickened Lauren's recovery.

48. On June 26, 2019, Elaine initiated guardianship and conservatorship proceedings in the FCPC for Lauren, Case No. PC-2019-001723.

   a. On September 6, 2019, the FCPC appointed Elaine as Lauren's permanent guardian. Attached as Exhibit 1 is the Order of Guardianship.

12

b. On October 21, 2019, the FCPC appointed Elaine as Lauren's permanent conservator. She was not required to obtain a bond. Attached as Exhibit 2 is the Order of Conservatorship.

## II.    The baclofen pump and the beginning of Ingram/carrier's malfeasance.

49. On June 28, 2019, Lauren had the baclofen pump surgically implanted.

50. Ingram/carrier's chosen neurosurgeon improperly implanted the baclofen pump. Lauren was in extreme pain as a result.

51. Significant issues continued and escalated with the baclofen pump that neither Shepherd's medical team nor the neurosurgeon resolved.

52. Lauren was in significant pain. A black substance oozed and swelled at and from her spine surgery site. The baclofen pump disc visibly protruded in Lauren's abdominal area and rested on bone.

53. Lauren was unable to fully participate in time sensitive therapies (physical, occupational, and speech) due to excruciating pain. Therapies involved trying to alleviate Lauren's pain from the baclofen pump, rather than the therapies intended purpose—to improve Lauren's abilities and recovery.

54. By August of 2019, Elaine requested a second opinion regarding the baclofen pump.

55. Ingram/carrier refused; Elaine had no means to safely transport Lauren to a doctor.

56. On September 25, 2019, Ingram/carrier and Shepherd attempted to schedule 3 full days and nights for Elaine and Lauren in Shepherd's Transitional Living Apartment, requiring Elaine to take care of Lauren as if Elaine and Lauren were at home, to give Elaine "a good idea of how it will be when it's just [Elaine caring for Lauren]."

57. On September 25, 2019, Elaine responded that there was a serious communication problem because Elaine was not physically able to care for Lauren alone, explaining it took 2-3 Shepherd employees to get Lauren on and off the toilet, it wasn't safe for one person to do Lauren's transfers alone, and that Elaine's previous neck, back, and shoulder injuries prevented her from physically doing Lauren transfers (in and out of bed, on and off the toilet, etc.).

58. By October of 2019, Ingram/carrier eventually agreed to allow a second opinion, but only by the original neurosurgeon's partner.

59. Elaine insisted on a second opinion with a neurosurgeon without an obvious conflict of interest. Ingram/carrier refused.

60. On October 8, 2019, Ingram/carrier finally allowed a second opinion with Dr. Jon Wille at Emory Hospital.

61. Dr. Wille evaluated Lauren and immediately determined that the baclofen pump created significant medical problems for Lauren.

62. Dr. Wille recommended a plan to resolve Lauren's painful baclofen pump issues.

63. Due to the danger of quickly changing the dosage of the baclofen, Dr. Wille recommended determining whether the baclofen medication was needed through daily titration of the medicine while Lauren's care team monitored and analyzed the medicine's impact on Lauren.

   a. If the baclofen medication was not significantly beneficial, Dr. Wille recommended surgery to remove the baclofen pump. If it was significantly helpful, Dr. Wille recommended surgery to replace the baclofen pump.

64. Dr. Wille agreed to perform the surgery at Emory Hospital in Atlanta, Georgia. Dr. Wille's recommendations could most expeditiously be carried out at Shepherd Center, which had daily titration ability and an established care team to evaluate whether the medication was beneficial to Lauren's recovery.

65. Conversely, step-down facilities, or alternative placements for Lauren: (1) could not titrate the medication daily but could only titrate the medication once per week or once every 2 weeks, (2) could not titrate the medication in-house but would need to transport Lauren off-site each time the medication was reduced, and (3) could not immediately begin titrating the medication; rather, a new medical team would first need to establish a baseline, estimated to take many weeks (no continuity of care).

66. On October 9, 2019, the day after the second opinion appointment, Ingram/carrier and Shepherd compelled Dr. Dennison (Lauren's treating physician at Shepherd) to discharge Lauren by October 16, 2019, to a step-down facility—Quality Living, Inc., ("QLI") in Omaha, Nebraska. Neither Ingram/carrier, Shepherd, nor QLI obtained the consent of Plaintiffs to move Lauren from Georgia to Nebraska, another state in which Plaintiffs had no connection.

67. Dr. Dennison followed Ingram/carrier's orders.

14

68. On October 17, 2019, Ingram/carrier *allegedly*[2] filed Tennessee Department of Labor and Workforce Development Form C-27, Notice of Controversy with the Tennessee Workers' Compensation Bureau—a one-page fillable form. By use of that Form C-27, Ingram/carrier suspended Lauren's workers' compensation benefits (wages and medical care).

69. Ingram/carrier alleged that it suspended Lauren's workers' compensation benefits (wages and medical care) because Plaintiffs refused to move Lauren to a step-down facility pursuant to Dr. Dennison's order.

   a. Ingram/carrier deliberately misled the FCPC by failing to state that Ingram/carrier themselves compelled the treating physician to order Lauren's transfer to a step-down facility.

   b. Ingram/carrier deliberately misled the FCPC by failing to state that Ingram/carrier themselves failed to follow Tennessee law and allow the employee to select her treating physician from a panel of three (3) doctors ("Form C-42"). TN. Code § 50-6-204(a)(3)(A)(i).

   c. Ingram/carrier failed to provide Lauren, Lauren's guardian, or Lauren's conservator with a Form C-42, Employee's Choice of Physician Medical Panel. Throughout Lauren's recovery, Ingram/carrier never completed a Form C-42 or provided options for a treating physician to Lauren, Lauren's guardian, or Lauren's conservator. Rather, they chose the specific physician and/or the specific facility and then controlled their own chosen physician's treatment orders.

   d. Ingram/carrier deliberately misled the FCPC by failing to disclose Dr. Wille's recommendations and that Ingram/carrier refused to follow Dr. Wille's recommendations.

   e. Ingram/carrier deliberately misled the FCPC by failing to state that Ingram/carrier hindered and harmed Lauren's recovery by delaying resolution to Lauren's baclofen pump issues and thereby were not acting in Lauren's best interests.

---

[2] Plaintiffs have not found proof that Ingram/carrier ever actually filed the C-27 form with the Tennessee Worker's Compensation Bureau ("TN WCB"). Instead, Ingram/carrier apparently only used the form to gain access to and improperly influence the FCPC.

70. On October 17, 2019, Ingram/carrier stopped making the twice monthly disability benefits payments to Lauren for her lost wages, contrary to their obligations under Tennessee workers' compensation laws.

71. On October 17, 2019, Ingram/carrier stopped making payments to Shepherd for Lauren's medical care, at a cost of approximately $8,000 - $9,000 per day, contrary to their obligations under Tennessee workers' compensation laws.

72. On October 17, 2019, Shepherd sent a letter to Elaine falsely claiming that Lauren, "has met all goals within her established plan of care." Elaine was instructed to "pursue and secure a bed for Lauren with a provider of post-acute residential rehabilitation services" so they could "prepare Lauren for her transfer on or before October 25, 2019."

    a. If Elaine did not (a) find a suitable, Ingram/carrier-approved facility, (b) secure a bed, and (c) agree to move Lauren to the cost-saving step-down facility (without first resolving Lauren's baclofen pump issues), Ingram/carrier would no longer pay Shepherd. Elaine and Lauren's estate would be financially responsible.

73. At the Tennessee settlement hearing on Lauren's workers' compensation claim (on August 18, 2021), Barringer admitted that this was financial coercion of Elaine.

74. Barringer believed the financial threat of running up Lauren's medical bills to the tune of $9,000 per day would motivate Elaine to ignore Lauren's best interests and quickly move Lauren to a step-down facility before resolving the baclofen pump issues that were causing Lauren immense pain. Barringer's belief was wrong.

75. Elaine persisted with her duties to Lauren as her Guardian and Conservator by attempting to timely resolve Lauren's chronic baclofen pump issues that were preventing Lauren from having a pain free quality of life and participating in time sensitive therapies.

76. On October 25, 2019, Ingram/carrier and Shepherd instructed Dr. Dennison to execute an Affidavit stating Lauren was ready to transition to a step-down facility.

77. Dr. Dennison's Affidavit deliberately downplayed the baclofen pump concerns and Lauren's excruciating, unresolved pain that prohibited her from therapy participation.

78. At some point, Dr. Dennison wrote a prescription for Lauren to be transferred to QLI.

79. Elaine requested other options from Ingram/carrier because QLI lacked the ability to timely titrate Lauren's medication, needlessly prolonging Lauren's suffering and minimizing her recovery opportunities and trajectory. Ingram/carrier refused.

16

**III.    The first improper suspension; false imprisonment; privacy/surveillance violations.**

80. On October 29, 2019, Ingram/carrier, through Shepherd, filed a petition with the FCPC to suspend Elaine as Lauren's guardian and have her replaced with a "neutral", temporary guardian to move Lauren across state lines to QLI.

   a. The petition filed in the Georgia probate court attached, as an exhibit, the one-page October 17, 2019 Tennessee workers' compensation form the Ingrams/carrier *allegedly* filed with the Tennessee workers' compensation proceedings.  It was not file-stamped.

   b. Ingram/carrier deliberately failed to tell the FCPC that no one on Lauren's behalf had consented to her workers' compensation claim being administered in Tennessee or that Lauren or someone on Lauren's behalf had the right to object to the Tennessee jurisdiction and file Lauren's workers' compensation claim in South Carolina, Florida, or Missouri. The Tennessee form was therefore meaningless for the FCPC's review.

   c. The petition attached Dr. Dennison's October 25, 2019 Affidavit; no other physician statement was included. Dr. Wille's recommendations were not included.

   d. Dr. Dennison immediately left for vacation. Shepherd staff stated that his vacation was unplanned.

   e. Plaintiffs were not provided with service or notice of the petition, Form C-27, Dr. Dennison's affidavit, or of any hearing. There was no medical emergency or urgency to move Lauren *from* the hospital that could most readily provide Lauren's needed medical care *to* a step-down, rehabilitation facility.

   f. The attorney for Shepherd, John Lowery, signed a certificate of service stating that he hand delivered a copy of the October 29, 2019 Petition to Elaine at Lauren's Shepherd Center hospital room on October 29, 2019. He did not. Elaine was in Missouri on October 29, 2019.

   g. Neither Lowery nor any agent or representative for Shepherd nor Ingram/carrier informed any court, to date, that Elaine had not been notified of the proceedings before the FCPC.

   h. Neither Elaine, as an interested person and as Lauren's Guardian and Conservator, nor Lauren, as an interested person and the Adult Ward, had an opportunity to contest the allegations contained in the October 29, 2019 Petition and its exhibits, or to cross-

17

examine Dr. Dennison and the statements made in his Affidavit at any time—all of which the FCPC relied upon in entering an order on November 1, 2019.

    i. Neither Elaine, as an interested person and as Lauren's Guardian and Conservator, nor Lauren, as the Adult Ward, had any opportunity to testify or to provide expert witness testimony of Dr. Wille at any time.

    j. Shepherd's Petition did not "identify each person who requires a guardian ad litem and the name and address of any person who is acting as conservator or guardian of the [ward]" as required by Georgia statute 29-9-2(a)(4)(A).

81. On November 1, 2019, the FCPC's Judicial Hearing Officer Julie Caplan ("JHO Caplan" or "Caplan") , a state actor, entered an order temporarily suspending Elaine and appointing the Georgia Department of Human Services—Yvette McAdams, also a state actor—as Lauren's temporary substitute guardian ("TSG") pursuant to the October 29, 2019 petition and allegedly pursuant to Georgia statutes 29-4-60, 29-4-61, and 29-4-62.

82. Neither Elaine, as Lauren's guardian and conservator, nor Lauren, as the Adult Ward, had any knowledge that the October 29, 2019 petition had been filed or that the November 1, 2019 order had been entered.

83. The November 1, 2019 Order required Georgia DHS McAdams to investigate and file a report within thirty (30) days. She failed to do that.  By statute and by the terms of the order, McAdams' temporary appointment terminated after 120 days or upon removal, whichever first occurred. Her appointment was terminated prior to the 120 days, and Elaine was reinstated, as discussed below.

84. **Pursuant to Georgia Code Sections 29-4-52 and 29-5-92, before the FCPC can suspend a guardian or conservator and appoint a temporary substitute guardian and/or conservator, the FCPC is <u>required to</u>:**

    a. **Be petitioned by an interested person,**

        a. An interested person is defined as: "any person who has an interest in the welfare of a minor, ward, or proposed ward, or in the management of that individual's assets." O.C.G.A. § 29-1-1.

    b. **Cite the guardian/conservator to answer the charge, and**

        a. Citation to the guardian/conservator includes service and notice.

        b. The contents of citations are governed by Georgia Code § 29-9-12.

      c.  The procedure of citations is governed by Ga. Prob. Ct. R. 5.6.

      c.  **Investigate the allegations**.

85. Shepherd was not an "interested person" as defined by statute.

86. Georgia code section 29-1-1(9) precludes Shepherd from being an "interested person" in Lauren's workers' compensation claim.

    a.  The code states that interested persons are those persons who have an interest in the welfare of the ward.

    b.  The code specifically references some non-natural persons (governmental agencies) as interested persons.

    c.  The code nowhere mentions that a healthcare facility or an insurance company are interested persons.

    d.  It would be natural for the Georgia Legislature to include healthcare facilities or insurance companies as persons interested in the welfare of the ward. The Georgia Legislature failed to do so.

    e.  Under the exclusion canon of construction, healthcare facilities and insurance companies are not interested persons as defined by Georgia Code Section 29-1-1(9).

    f.  Shepherd and Ingram/carrier were therefore not interested persons under Georgia law who could file to suspend Elaine as Lauren's guardian.

    g.  Furthermore, Shepherd's long standing contractual relationships with Ingram/carrier demonstrates their collective and substantial financial conflict of interest with Lauren's best interests.

87. Shepherd failed to cite Elaine to answer the charge or provide Elaine with notice of the hearing or any opportunity to be heard.

88. The FCPC failed to cite Elaine and did not give Elaine notice and an opportunity to answer the charge prior to her suspension as Lauren's guardian in its November 1, 2019 order.

89. Plaintiffs were not provided with any notice and service of the petition.

90. The FCPC (JHO Caplan) did not make the statutorily required investigation prior to suspending Elaine.

91. Lauren was not provided with legal representation or a GAL regarding the October 29, 2019 petition or in the FCPC's consideration of the petition in entering an order on November 1, 2019. O.C.G.A. §§ 29-4-23(c), 29-4-60(e), 29-9-2(a).

92. On November 4, 2019, John Lowery, the attorney for Shepherd, finally brought Elaine a copy of the October 29, 2019 petition to Lauren's hospital room but failed to provide Elaine with a copy of the November 1, 2019 order or to provide Lauren with a copy of the petition or order.

93. On November 8, 2019, Yvette McAdams notified Plaintiffs that Elaine was suspended as Lauren's guardian.

   a. McAdams informed Plaintiffs that Lauren would be transferred to QLI in Nebraska on Tuesday morning, November 12, 2019.

   b. Yvette McAdams was required to procure an order from the FCPC to give herself and the Georgia Department of Human Services permission to move Lauren out of Georgia. O.C.G.A. § 29-4-23(b)(1).

      a. Georgia DHS/McAdams sought no such order.

      b. Ingram/carrier and Shepherd sought no such order.

      c. FCPC entered no such order.

   c. The FCPC was required to consider the views of the conservator (Elaine), act in coordination and cooperation with the conservator (Elaine), and appoint a GAL for Lauren *before* granting a guardian's request to move Lauren out of Georgia. O.C.G.A. § 29-4-23(b)-(e).

      a. The FCPC failed to do that.

94. On November 8, 2019, Ingram/carrier and Shepherd installed video and audio recording devices in Lauren's hospital room.

95. From November 8, 2019, through November 19, 2019, Ingram/carrier and Shepherd video and audio recorded Lauren using a bed pan, having adult diapers changed, getting bed baths, and having discussions about her legal rights with Elaine. Lauren could not have any communications without being monitored and recorded by Ingram/carrier and Shepherd. Lauren could not do anything without being monitored and recorded by Ingram/carrier and Shepherd.

20

96. Ingram/carrier and/or Shepherd had an employee and/or representative monitoring the video and audio recording devices 24/7 while also making saved recordings. Ingram/carrier and Shepherd placed a "security nurse" outside Lauren's room 24/7.

97. Plaintiffs are unaware of how many recipients have recordings of Lauren in very vulnerable situations, causing extreme emotional distress.

98. Ingram/carrier and Shepherd precluded Elaine from taking Lauren off the floor to visit the garden, Starbucks, church services, or restaurants—trips that were previously allowed, encouraged, and needed to retain Lauren's motivation and her overall recovery.

99. Ingram/carrier/Shepherd did this under the auspices of Lauren being a "flight risk."

   a. Lauren could not pull herself to a sitting position, feed herself, stand (much less walk), and did not have bladder or bowel control.

   b. A mechanical hoyer was needed to lift Lauren out of bed and place her in a wheelchair.

   c. Lauren was not a "flight risk."

   d. Lauren was taking multiple prescription medications—prescribed by Shepherd Center and insured by Ingrams/carrier. Elaine would not move Lauren and thereby leave Lauren without needed prescription medications.

   e. Elaine had no ability to physically or financially move or care for Lauren.

100. On November 9, 2019, Elaine retained counsel.

101. On November 12, 2019, Elaine's counsel emergently obtained a 7-day injunction from the Superior Court in Fulton County, preventing Ingram/carrier from transporting Lauren to QLI in Nebraska.

102. Ingram/carrier acted with Shepherd and QLI to reschedule Lauren's forced transportation to QLI on November 19, 2019.

103. On November 13, 2019, Elaine's counsel emergently filed a motion requesting a hearing on the October 29, 2019 petition and November 1, 2019 order.

104. On November 13, 2019, JHO Caplan denied Elaine's request for a hearing.

105. On November 14, 2019, Lauren, for the first time, was served with the October 29, 2019 petition.

IV.    **Ingram/carrier, Shepherd, and the Georgia Department of Human Service's forced interstate transfer of Lauren to Nebraska.**

106. On November 19, 2019, Ingram/carrier and Shepherd forcibly transported Lauren across multiple state lines to QLI in Nebraska—against Lauren's and Elaine's wills, against Lauren's best interests, against Georgia law, without the required coordination and cooperation of the conservator (Elaine), without the appointment of a GAL as required by Georgia statute, and *without a court order*. O.C.G.A. §29-4-23(b)(1), (c), and (e).

107. The forced transfer allowed Ingram/carrier to save between $6,815 and $7,815 per day (Shepherd cost Ingrams/carrier $8-9,000/day, while QLI only cost Ingrams/carrier $1,185/day). The forced transfer left Lauren in great pain for many months.

108. At QLI, Lauren had no friends or family and Lauren could not obtain appropriate, timely, and necessary medical care to titrate the baclofen medication, have the baclofen pump removed—all of which decreased her ability to participate in physical, occupational, speech, and sports/equine therapies. Therapies were routinely cut short or cancelled because Lauren's pain level made participation impossible.

109. On or about November 20, 2019, there was an initial care plan meeting regarding Lauren. Elaine, Lauren's brother, and Lauren's grandparents were allowed to attend, but were specifically excluded from attending the other weekly care plan meetings for Lauren. Ingram/carrier had a representative flown into each and every care plan meeting and provided Elaine with a "need-to-know" (limited) update following most meetings.

110. On December 13, 2019, Elaine's attorneys filed a Motion with the FCPC to terminate McAdam's (Georgia Department of Human Service's) appointment and reinstate Elaine as Lauren's guardian.

111. The FCPC did not respond.

112. On January 24, 2020, Elaine's attorneys filed an Emergency Motion with the FCPC to terminate the TSG's appointment and reinstate Elaine.

113. The FCPC did not respond.

114. TSG McAdams did not respond to Elaine's November 13, 2019 Motion or Elaine's January 24, 2020 Emergency Motion.

115. On January 28, 2020, TSG McAdams filed her 30-day report with the FCPC that was due on or before December 1, 2019.

22

116. On February 6, 2020, Elaine sent an email expressing outrage to her attorneys. The FCPC was copied on Elaine's email.

117. On February 7, 2020 the FCPC's JHO Caplan ordered a limited appointment for GAL Ashford to specifically investigate and make a recommendation to the FCPC regarding Elaine's motions.

118. On February 14, 2020, Ashford recommended Elaine be immediately reinstated. Ashford reported that Lauren trusts Elaine, that Elaine is a "fierce advocate for Lauren" and that having unknown individuals making decisions for Lauren was causing Lauren so much distress that it was likely interfering with her recovery.

119. On February 14, 2020, Elaine was reinstated as Lauren's guardian, the TSG's appointment was terminated, and GAL Ashford's appointment automatically terminated.

120. Ashford's February 14, 2020 report was not obtained by Plaintiffs until March 25, *2025*. It was provided in the FCPC's Record on Appeal to the Georgia Court of Appeals (subsequent to Plaintiffs' two appeals and two writs mandating the FCPC turnover the full court records as the Record on Appeal). The FCPC failed to include it with its "full records" sent to the Missouri probate court in 2022. Ashford failed and refused to provide Lauren's court records or Ashford's report to Lauren or Elaine.

121. Pursuant to the FCPC order and Ashford herself, Ashford's appointment automatically terminated on February 14, 2020.

122. On February 14, 2020, five months after Dr. Willie made his recommendation, Lauren received corrective surgery from a neurosurgeon in Nebraska. The improperly placed and painful baclofen pump was removed. On February 15, 2020, Lauren reported significantly decreased pain and Elaine drove her back to QLI where Lauren resumed therapies within days.

V.   **Ingram/carrier and Ashford's forced interstate transfer of Lauren to Missouri.**

123. In March of 2020, at the beginning of COVID, Ingram/carrier decided to move Lauren home with Elaine.

124. In March of 2020, Dr. Kult (Lauren's treating physician at QLI) and Lauren's therapists at QLI ordered extensive home modifications and equipment.

125. The recommended home modifications would have cost Ingram/carrier at least $200,000.

23

126. On March 12, 2020, Dr. Kult wrote a prescription requiring Lauren to receive twenty-four hour/day professional supervision and assistive care.

127. The doctor-required around the clock professional supervision would have cost Ingram/carrier at least $50/hour, or approximately $450,000 per year.

128. During April of 2020, multiple communications were sent between Elaine, Ingram/carrier and QLI. Elaine expressed concerns with how COVID would impact Lauren's wellbeing, her ability to receive the doctor-ordered multiple therapies per day, and a provider's ability to staff the doctor-required 24/7 professional supervision for Lauren.

129. On April 3, 2020, Elaine did not receive answers from Ingram/carrier/QLI regarding her concerns for Lauren's transportation and in-home care.

130. In April of 2020, Ingram/carrier failed and refused to provide Elaine three options for Lauren's treating physician as required by Tennessee law when forcing Lauren's move home to Missouri.

    a. Ingram/carrier sent all of Lauren's medical records to Dr. Christopher Wolf in Missouri without Lauren's or Elaine's (as Lauren's guardian and conservator) knowledge or consent.

    b. Ingram/carrier dictated that Lauren was only allowed to be treated by Dr. Wolf in Missouri.

131. Elaine and Lauren did not want Lauren to move home until Ingram/carrier provided the doctor-ordered 24/7 professional care, supervision, therapy assistance, home modifications, transportation, and all other therapies recommended by Dr. Kult or by QLI professionals.

132. Elaine called the provider Ingram/carrier claimed would (1) transport Lauren home from Nebraska and (2) provide the 24/7 supervision. Elaine was informed by both an owner and the nursing supervisor that they could not legally transport a patient across state lines, they had no record of a work order for Lauren, and that they could not guarantee 24/7 care because of COVID.

133. On April 14, 2020, Ingram/carrier filed a Tennessee Department of Labor and Workforce Development Form C-27, Notice of Controversy with the Tennessee Workers' Compensation Bureau.

24

134. Ingram/carrier suspended Lauren's benefits (wages and medical care) again with false allegations that Elaine was "intentionally interfering" with Lauren's "reasonable medical care."

    a. Ingram/carrier deliberately failed to state that Ingram/carrier themselves were refusing to follow the recommendations from Dr. Kult and QLI, in that Dr. Kult made multiple orders and recommendations for Lauren to transfer safely home including 24/7 professional care and supervision and multiple home modifications (i.e. ramps, shower, bars) with equipment that were never ordered or installed.

    b. Ingram/carrier deliberately failed to state that COVID had just begun, and health professionals disagreed regarding best practices for someone in Lauren's situation. Federal and state agencies recommended Lauren remain at QLI in the short-term, where she had established relationships with her caregivers and therapists (continuity of care). At home, Elaine and Lauren's brother were sick and could not be tested for COVID because testing was not yet readily available.

    c. Ingram/carrier deliberately misled the FCPC by failing to state that they had not made payments to Lauren at all since October 17, 2019, and only partial payments prior. Ingram/carrier never paid Lauren the full amount she was owed for her weekly disability rate, as mandated by the Tennessee workers' compensation laws.

    d. Ingram/carrier purposefully misled the FCPC by failing to state that Ingram/carrier themselves again failed to follow Tennessee law and allow Lauren, the employee, (or Elaine on Lauren's behalf as her guardian and conservator) to select her treating physician from a panel of three (3) doctors.

    e. Ingram/carrier purposely misled the FCPC by failing to provide Lauren (or Elaine on Lauren's behalf as her guardian, and conservator) with a Form C-42, Employee's Choice of Physician Medical Panel.

## VI. The second and third improper suspension of Elaine as Lauren's conservator and guardian, respectively.

135. On April 16, 2020, Ingram/carrier filed a second Petition in the FCPC to appoint a TSG and suspend/remove Elaine as Lauren's guardian.

136. Plaintiffs reallege and incorporate the contents of Paragraph 84 above, citing Georgia Code Sections 29-4-52 and 29-5-92.

137. As stated in Paragraph 86 above, O.C.G.A. § 29-1-1(9) precludes Ingram/carrier from being an "interested person" in Lauren's guardianship and conservatorship proceeding. Ingram/carrier and Plaintiffs were adversaries in an existing lawsuit—Lauren's workers' compensation claim, Lauren Taylor, Employee v. John & Stephanie Ingram, LLC, Employer—initiated by Ingram/carrier in Tennessee and valued at over $40,000,000. Ingram/carrier's interests were and are opposed and conflicted with Lauren's best interests and wellbeing.

138. Ingram/carrier's Petition did not "identify each person who requires a guardian ad litem and the name and address of any person who is acting as conservator or guardian of the [ward]" as required by Georgia statute 29-9-2(a)(4)(A).

139. Ingram/carrier's petition included an affidavit signed by QLI's Dr. Kult stating that Elaine's home was no longer suitable for Lauren's recovery and that Lauren needed to be immediately and permanently transferred to a facility in Carbondale, Illinois.

140. Ingram/carrier purposely misled the FCPC by including the Tennessee Forms C-27 filed on October 17, 2019, and on April 14, 2020, as exhibits without proper context.

141. Ingram/carrier's April 16, 2020 petition contained multiple false allegations that Elaine was preventing the 24/7 professional supervision from coming in her home and preventing the Missouri nurses from transporting Lauren home from QLI in Nebraska. As stated in Paragraph 121 above, these allegations are completely false.

142. Neither Lauren nor Elaine were served with the petition to remove Elaine as guardian. O.C.G.A. §§ 29-4-52 and 29-5-92.

143. Ingram/carrier, as the moving party, failed to prepare and file a citation to Elaine as required by Georgia probate court rules. Georgia Uniform Probate Court Rule 5.6(A).

144. On April 22, 2020, JHO Caplan ordered a limited appointment for GAL Dana Ashford, to specifically investigate and recommend whether Elaine should be suspended as Lauren's guardian or conservator.

145. Ashford was to be paid directly by Ingram/carrier and her limited appointment automatically terminated when the final order was entered on July 9, 2020.

146. GAL Ashford threatened Elaine with Ashford's power in the FCPC and reminded Elaine of the FCPC's prior November 1, 2019 order that was entered to Lauren's detriment and without a hearing.

147. GAL Ashford threatened Lauren that if Lauren did not go home with Elaine that Ashford would have Lauren permanently moved to "a nursing home with old people" (again, during the beginning of COVID) knowing Lauren had only months earlier been decannulated from a ventilator.

148. Ashford knew that her threats would cause stress and hardship for Lauren and Elaine.

149. Ashford's February 14, 2020, Report (prior to when Ingram/carrier began paying Ashford directly and privately) argued,

> Despite her injury, Lauren [is] very coherent and she has opinions. She recalls the events leading to her injury, and she understands some of the implications of having an out-of-state guardian. . . . I believe there is no [] longer a need for a Temporary Substitute Guardian. This situation [the November 1, 2019, appointment of a temporary substitute guardianship] is causing undue stress to Lauren, which could be interfering with her recovery.

150. Although removed by the FCPC on February 14, 2020, Advocate Yvette McAdams stated (in her December 4, 2020 report) that on April 27, 2020, both QLI and Ingram/carrier called her to discuss Lauren, with Ingram/carrier threatening to "pursue guardianship of Ms. Taylor in Tennessee" if Elaine would not agree to take Lauren home without the 24/7 care, home modifications, and other needed medical care that was ordered by Lauren's doctor and required to be provided to Lauren by Ingram/carrier.

151. On or about May 2, 2020, without any notable change to Lauren's condition, needs, or recovery—and without any home modifications or provided 24/7 professional care—Dr. Kult signed discharge orders releasing Lauren from QLI's care to Elaine's home in Missouri. This was contrary to his April 16, 2020 affidavit.

152. On May 2, 2020, Elaine brought Lauren to their home in Missouri where they have remained without the doctor ordered 24/7 professional care, supervision, and therapy assistance, doctor and therapist recommended home modifications, transportation, and necessary and prescribed therapies—all of which were required to be provided for Lauren by Ingram/carrier. Tenn. Code. Ann. §§ 50-6-204(a)(1)(A), and (6)(A).

153. On May 7, 2020, Ashford recommended that the FCPC suspend Elaine as Lauren's conservator because when Elaine insisted on appropriate, timely medical care for Lauren, Ingram/carrier refused to make any further payments to Shepherd and then to QLI, thereby

27

creating a financial liability for Lauren. Ashford also stated that Elaine did not post a bond. However, Elaine's conservatorship order clearly states that no bond was required.

154. On May 7, 2020—the same day as Ashford's report—JHO Caplan immediately suspended Elaine as Lauren's conservator without the statutorily required citation, service, and notice to Elaine, or a reasonable opportunity to be heard. O.C.G.A. §29-5-92.

155. On May 7, 2020, the FCPC entered an order appointing the FCPC county conservator, William Jenkins, as Lauren's Temporary Substitute Conservator ("TSC") for a maximum of 120 days.

156. The FCPC/JHO Caplan failed to follow the necessary requirements contained in O.C.G.A. § 29-5-92. Plaintiffs fully incorporate the contents of Paragraph 84 above, citing Georgia Code Sections 29-4-52 and 29-5-92.

    a. JHO Caplan did not cite Elaine.

    b. JHO Caplan did not provide Elaine with an opportunity to answer the charge.

157. On May 7, 2020, JHO Caplan entered an order freezing Lauren's bank account.

    a. Neither Lauren nor Elaine were provided any due process prior to JHO Caplan's order taking control of over $100,000 of Lauren's property.

158. Plaintiffs were not notified or served with Ashford's report or JHO Caplan's Orders.

159. Elaine was not given the opportunity to "answer the charge" or the allegations against her.

160. On May 8, 2020, neither Elaine nor Lauren knew Elaine was suspended as Lauren's conservator.

161. Elaine and Lauren signed a contract with Missouri attorney Bryan Sanger for Bryan Sanger and Tennessee attorney Jeffery Roberts to represent Lauren's interests in her workers' compensation claim.

162. That contract was later deemed void by Ashford, Barringer, Jenkins, Gorman, Sanger, and Roberts because on May 8, 2020, Elaine allegedly lacked authority as Lauren's conservator even though Jenkins appointment as TSC was not valid and of no effect.

163. On June 23, 2020, Jenkins filed an Adult Conservatorship Inventory and Asset Management Plan. He failed to list Lauren's workers' compensation claim as an asset.

164. On June 26, 2020, Elaine sent Jenkins a letter with financial concerns for Lauren, and for Elaine's inability to both work and provide the 24/7 care, supervision, transportation, etc. for Lauren.

165. Jenkins did not respond to Elaine's and Lauren's concerns.

166. On June 30, 2020, Ashford tendered her final report to the FCPC pursuant to the Ingrams/carrier's petition and her April 22, 2020 GAL appointment.

167. Ashford recommended Elaine be suspended as Lauren's guardian because Ashford had to "extensively intervene" to force Elaine to take Lauren home. Elaine refused to approve Lauren's transfer home until such time as Ingram/carrier was compliant with its own treating physician's medical care plan for Lauren to transition safely home. Dr. Kult's and QLI's care plan included but was not limited to staffing for 24/7 professional supervision and assistive care, extensive home modifications and equipment, access to multiple therapies per day, and safe transportation available (home from QLI and daily to and from multiple therapies and doctor appointments).

168. Ashford "extensively intervened" to force Elaine to take Lauren home from QLI with nearly all of the aforementioned care plan left to Elaine to do or pay for herself. Ashford insisted that Elaine take Lauren to in-person doctor appointments even when the doctor himself stated an online visit was perfectly acceptable due to COVID. Ashford forced Elaine to take Lauren to in-person therapies despite the treating physician stating that Elaine and Lauren could weigh whether in-person therapies or online therapies were a better option due to COVID and because most in-person therapy facilities were closed due to COVID.

169. Ashford insisted on behalf of Ingram/carrier that Elaine take Lauren only to the therapy facility that was also bussing in nursing home patients that sat alongside Lauren while coughing and not wearing masks—in violation of CDC protocols at the time.

170. Elaine disputed Ashford's decisions for Lauren's medical care and care plan as not in Lauren's best interests and not recommended by Lauren's physicians, CDC, or state health agency. Ashford, who greatly exceeded her authority to "investigate and report" to the FCPC, recommended Elaine be suspended. On July 1, 2020, Elaine requested Lauren's guardianship and conservatorship be transferred to the Missouri probate court.

171. Ashford, while being paid directly and privately by Ingram/carrier, recommended the FCPC suspend Elaine and appoint Ingram/carrier's treating physician's (Dr. Wolf's) friend, Sharon Gorman, as Lauren's TSG.

172. Ashford stated that Ingram/carrier would pay Gorman's fees.

173. On July 9, 2020, with a corrected order entered July 10, 2020, JHO Caplan suspended Elaine as Lauren's guardian and appointed the Sharon Gorman as Lauren's TSG for a maximum of 120 days, allegedly pursuant to Georgia Code Section 29-4-60, wherein Gorman was ordered to investigate Lauren's needs and whether or not it was in Lauren's best interests for Elaine to continue to serve as Lauren's guardian. Gorman was ordered to file a report within 60 days. Gorman never filed a report.

174. Plaintiffs fully incorporate herein the contents of Paragraph 84, citing Georgia Code Sections 29-4-52.

175. JHO Caplan failed to follow the jurisdictional requirements contained in Georgia Code Section 29-4-52.

    a. JHO Caplan did not cite Elaine.

    b. JHO Caplan did not allow Elaine to answer the charge.

176. Elaine and Lauren were not provided with service, notice, or an opportunity to be heard.

177. On July 9, 2020, Ashford's limited appointment as Lauren's GAL automatically terminated pursuant to the terms of the April 22, 2020 order.

## VII.  Jenkins' improper attempt to extend his TSC appointment with void letters.

178. On July 17, 2020, Jenkins obtained additional Temporary Substitute Conservatorship Letters from an FCPC employee/clerk without a required court order.

    a. The July 17, 2020 Letters state, "Your authority to act pursuant to these Letters is subject to . . . the Order dated July 9, 2020 appointing you (attached)."

    b. Jenkins, in a July 9, 2024 filing with the Georgia Supreme Court, claimed the July 9, 2020 Order is "not located in the Fulton County Probate Court file, and appears to have been lost." It is more probable that it never existed.

179. On July 23, 2020, Jenkins stated his intent to the Roberts' law firm to settle Lauren's workers' compensation claim in full while all of Lauren's decision-making abilities were taken from Elaine, as Lauren's Conservator and Guardian; Jenkins' time sheet indicates a telephone call with Roberts' associate, "now that Elaine has been removed as guardian also; discussion of possible settlement of case."

180. On September 4, 2020, the May 7, 2020 temporary order (even if valid), appointing Jenkins as the TSC, lapsed.

181. On September 4, 2020, Elaine was automatically reinstated as Lauren's conservator by operation of Georgia statute and the order itself.

## VIII.  The October 30, 2020 improper suspension of Elaine as Lauren's guardian and conservator.

182. Even though his May 7, 2020 temporary substitute appointment terminated nearly two months prior, on October 30, 2020, Jenkins sent an *ex parte* email directly to JHO Caplan requesting he be reappointed as Lauren's TSC because they (Jenkins, Ashford, Roberts, Gorman, and Barringer) needed to settle Lauren's workers' compensation claim in full while they were controlling the decision-making abilities for Lauren.

183. Jenkins did not include one statement referencing concern for Lauren's best interests— financial, health, or otherwise.

184. Plaintiffs were not provided with Jenkins' email and were not noticed or served with the accusations against Elaine. Elaine did not have any knowledge of the email until over two years later, when she obtained the partial records sent by the FCPC to the Missouri probate court.

185. On October 30, 2020, Ashford, even though her April 22, 2020 limited appointment terminated nearly four months prior, filed a "Supplement/Update to Acceptance and Answer of Guardian ad Litem" with the FCPC, requesting an "extension" of Gorman's appointment—with no copy or certificate of service to Plaintiffs.

186. The FCPC has no jurisdiction to "extend" a temporary substitute appointment past 120 days. The limitation is statutorily imposed. O.C.G.A. § 29-5-100(b).

187. On October 30, 2020, on the same day that Jenkins directly and privately emailed JHO Caplan to reappoint Jenkins and Gorman, and that Ashford filed a Supplement to extend Gorman's appointment, JHO Caplan entered an order reappointing Jenkins as Lauren's TSC and Gorman as Lauren's TSG for a maximum period of 120 days pursuant to the requests made by Jenkins and Ashford.

    a. Elaine was neither cited nor provided notice and a hearing during which any charges could have been contested.

    b. Lauren was not represented in the FCPC's decision to enter the October 30, 2020 order.

31

188. The October 30, 2020 Order again required Gorman to report to the Court whether it was in Lauren's best interest for Elaine to continue to serve. Again, Gorman failed to file any report.

189. There was no service, notice or a hearing for Elaine and/or Lauren to contest the allegations contained in Jenkins' improper email and/or Ashford's "supplement."

    a. Jenkins' TSC appointment expired on September 4, 2020. Jenkins had no standing or authority to email JHO Caplan on October 30, 2020.

    b. JHO Caplan knew or should have known that Jenkins was not an interested person nor an interested party and that his appointment ended almost 2 months earlier because she was the JHO that entered the May 7, 2020 order for a maximum of 120 days and because she had access to the sealed court records wherein she could readily discern that Jenkins' prior appointment terminated by no later than September 4, 2020, that Elaine was automatically reinstated as Lauren's conservator on September 4, 2020, and that Jenkins was not an interested person on October 30, 2020.

    c. Ashford's limited appointment automatically expired on July 9, 2020. Ashford had no standing or authority to file a "supplement" with the FCPC on October 30, 2020.

    d. JHO Caplan knew or should have known that Ashford's appointment lapsed almost 4 months earlier and her supplemental filing was not appropriate or lawful because Ashford had no further interest in Lauren's guardianship and conservatorship proceeding after her prior appointment automatically terminated on July 9, 2020.

    e. Jenkins, the county conservator, failed to obtain separate letters of conservatorship as required by statute. O.C.G.A. §§ 29-8-3 and 29-10-6.

190. On February 27, 2021, Jenkins' and Gorman's newest (yet invalid) 120-day maximum temporary substitute appointments lapsed pursuant to Georgia statute and the terms of the October 30, 2020 FCPC order. O.C.G.A. § 29-5-100(b).

**IX.**     **Jenkins' March 22, 2021 Petition to reappoint himself; Jenkins' March 25, 2021 Petition to settle Lauren's claim and establish a special needs trust; and improper March 25, 2021 *nunc pro tunc* to February 26, 2021 suspension of Elaine as Lauren's guardian and conservator.**

191. On March 4, 2021, Ingram/carrier filed Tennessee Bureau of Workers' Compensation Form C-23, Notice of Denial, in the Tennessee courts denying Lauren's workers'

compensation claim as of March 4, 2021, "due to claimant's non-compliance with medical treatment" alleging Lauren was refusing to follow their chosen treating physician's (Dr. Wolf's) orders.  Therefore, on March 4, 2021, Lauren's workers' compensation benefits were discontinued (for medical care and weekly disability benefits) while Jenkins, Gorman, and Ashford were claiming all decision-making authority for Lauren as Lauren's TSC (since May 7, 2020), TSG (since July 9, 2020), and GAL (since April 22, 2020), respectively.

a. This time Ingram/carrier did not file a petition to remove Lauren's claimed decision-makers (Jenkins, Ashford, and Gorman)—unlike the Tennessee form filed on October 17, 2019 (used as an exhibit in their October 29, 2019 petition to gain control of Lauren's decision making abilities from Elaine), and unlike the Tennessee one-page form filed on April 14, 2020 (used as an exhibit in their April 16, 2020 petition to gain control of Lauren's decision making abilities from Elaine).

b. Ingram/carrier used their false allegations that Elaine was preventing Lauren from receiving life-saving medical care to deny Lauren's workers' compensation claim to fully settle Lauren's workers' compensation claim. Despite the very serious allegations that Elaine was jeopardizing Lauren's life, not one person involved in Lauren's Missouri medical care, Georgia guardianship/conservatorship proceeding, or Tennessee workers' compensation court proceeding (Dr. Wolf, Judge Kenya Johnson, Judicial Hearing Officers Barbara Koll and Marian Parker, Jenkins, Gorman, Ashford, John Barringer, M. Steele Cantey, Jeff Roberts, Judge Kenneth Switzer) who was legally obligated to report such a serious allegation to the authorities, did so.

c. Ingram/carrier utilized their Tennessee form(s) and Lauren's and Elaine's inability to contest the validity of the Ingrams'/carrier's allegations and other false statements (because neither Lauren nor Elaine were not provided any notice or opportunity to do so in any court) to obtain approval from the FCPC to fully settle Lauren's workers' compensation claim in Tennessee while they had control and influence over Lauren's alleged decision-makers who had never been validly appointed to attend to Lauren's needs. Lauren and Elaine were not provided with an opportunity to be heard by either the FCPC or the Tennessee courts because

33

Lauren was deemed legally incompetent by the FCPC and could only be represented in court proceedings through her purported fiduciaries—namely, Jenkins, Gorman, and Ashford.

192. On March 22, 2021, Jenkins—without any authority or standing whatsoever, but while still controlling Lauren's assets including over $100,000 cash and her workers' compensation claim—filed a "Petition to Extend Temporary Substitute Conservatorship."

    a. Jenkins' prior appointment terminated on February 27, 2021.

    b. There was no TSC to extend on March 22, 2021.

    c. Jenkins was neither an "interested person" or an "interested party" on March 22, 2021 because his prior temporary appointment, even if valid, automatically terminated on February 27, 2021, and Elaine was automatically reinstated as Lauren's conservator (and guardian) on February 27, 2021. O.C.G.A. §29-1-1(9).

    d. Jenkins further claimed that his negotiation efforts "to settle [Lauren's] case with the insurance carrier" were "at a critical point and the continued involvement of [Jenkins] is necessary."

    e. Jenkins was required to serve his March 22, 2021 petition on Lauren and Elaine. O.C.G.A. §§ 29-5-101(b)(1)(B), (C); 29-11-17(a), (b); 29-5-100(e).

    f. Jenkins did not serve his March 22, 2021 petition on Lauren or Elaine.

    g. Instead, he served it on Gorman and Ashford, both of whom also had expired appointments which, as the FCPC conservator, he should have known.

193. Statements on the March 4, 2021 one-page Tennessee form, statements contained in Barringer's March 9, 2021 letter to Bryan Sanger, and statements contained in Jenkins' March 22, 2021 petition each falsely alleged that Elaine was preventing and interfering with Lauren obtaining doctor ordered and medically emergent and critical services. During this time from after Lauren returned home on May 2, 2020, Elaine provided all of Lauren's care without the physician ordered 24/7 professional supervision/care, home modifications, and home assistive equipment.

194. Instead, Lauren's treating physician (Dr. Wolf) wrote on June 22, 2021, "I have not seen the patient back for follow up *due to no authorization* at this time to see patient. . . . I am happy to see the patient back if additional information or assistance is necessary to assist in her obtaining the maximum outcome." (Italics added.)

34

195. Defendants pushed forward with a financial settlement in Ingrams/carrier's favor; Jenkins took fees from Lauren's account; Jeff Roberts took fees from the settlement; and Ashford was paid directly and privately unknown amounts by the Ingrams/carrier.

196. On March 25, 2021, Jenkins, filed a Petition for Order Approving Settlement of Ward's Workers Compensation Case and Petition to Establish Special Needs Trust with the FCPC upon terms that were not previously provided to or approved by Elaine or Lauren and on terms that were particularly adverse to Lauren and her interests and not sufficient to pay for all of her health and care needs.

197. Upon Jenkins' March 25, 2021 Petition, the FCPC's Judicial Hearing Officer Barbara Koll ("JHO Koll" or "Koll") immediately entered an order reappointing Jenkins and Gorman *nunc pro tunc* to February 26, 2021.

198. The FCPC's March 25, 2021 order specifically stated it relied upon Jenkins' March 22, 2021 Petition in entering its order.

199. FCPC's JHO Koll offered no rationale, legal or otherwise, for entering the March 25, 2021 *nunc pro tunc* to February 26, 2021.

200. Plaintiffs reallege and incorporate the contents of Paragraph 84 above.

201. The March 25, 2021 Order again ordered Gorman to report to the Court whether it was in Lauren's best interest for Elaine to continue to serve. Again, Gorman failed to file any report.

202. The March 25, 2021 Order was—as with all prior orders—required to be served upon Lauren, as the Adult Ward, and Elaine, as Lauren's permanent guardian and conservator.

203. The March 25, 2021 Order was not served on Lauren or Elaine. No notice of any proceedings leading to the March 25, 2021 order was given to Elaine or Lauren.

204. Lauren and Elaine were not allowed to contest any allegations against them—they were not provided notice, service, or a reasonable opportunity to be heard.

205. Elaine was not cited to answer any charges that her service as guardian and conservator should be temporarily suspended as required by O.C.G.A. §29-4-62 and 29-5-52.

206. JHO Koll did not investigate the allegations made against Elaine.

207. The March 25, 2021 order was for a maximum of 120 days (beginning February 26, 2021) and terminated on June 26, 2021.

35

208. On March 25, 2021 Jenkins, as the county conservator, again failed to obtain separate letters of conservatorship. O.C.G.A. §§ 29-8-3; 29-10-6.

209. On March 26, 2021, Jenkins emailed his Petition requesting the FCPC approve the settlement of Lauren's workers' compensation claim to Lauren. Lauren immediately informed him that the amounts were completely unacceptable because it would not cover a fraction of her needed medical care due to her injury, it did not consider her full wages and benefits, and that a special needs trust was not appropriate.

210. On March 29, 2021, Jenkins, Lauren, and Elaine had a phone conference to discuss the possible settlement of Lauren's workers' compensation claim wherein Elaine inquired about obtaining discovery to ascertain a fair settlement for Lauren. Jenkins responded, "…in doing a settlement, you wouldn't do discovery, Elaine" and "this is not a pending lawsuit, this is a settlement" and "You know, a little bit of knowledge is really dangerous. And that's what you have – a little bit" and "you cannot do discovery in the middle of settlement negotiations."

   A. Elaine further inquired, "When there [is] no discovery done, when there was no deposition taken, how do you settle a case like this, based on nothing but what the opposing counsel has given you?" Jenkins replied, "You know, I'm not gonna go back and forth about doing discovery during the settlement negotiations. You don't do it."

   B. Elaine again raised specific concerns about the weekly wage Lauren was to receive for her lifetime, as she had done in her June 26, 2020 letter to Jenkins. Jenkins stated that the weekly rate, "was a determination by the [Tennessee] workers' compensation board." The board made no such determination.

   C. Elaine requested Jenkins "look at it and let us know where the [weekly rate] number came from and who approved it [and] what was looked at?" Jenkins responded, "That is a lot of work!" Elaine: "Well, exactly. This is the rest of [Lauren's] life. Somebody needs to be putting in a lot of work." Jenkins repeated: "That is a lot of work."

   D. Elaine went on to express concerns: "[Lauren] hasn't gotten a penny, and [the Ingrams/carrier] could be on the hook for up to 20% for penalties for not paying what she should've received this whole last two years."

36

E. Jenkins asked, "Well, if it is that easy to do, then why don't you do it?" Elaine responded, "Because I am not the conservator or the guardian or the lawyer." Jenkins replied, "You're the one that keeps raising all these questions..." to which Elaine queried, "I guess I'm wondering why nobody else is asking these questions on [Lauren's] behalf."

211. From April 8, 2021, through June 30, 2021, due to Lauren's and Elaine's strong objections to the settlement terms, the FCPC's Judicial Hearing Officer Marian Parker (hereinafter "JHO Parker" or "Parker") claimed she held in abeyance any consideration of Jenkins' March 25, 2021 Petition for Order Approving Settlement of Ward's Workers Compensation Case and Petition to Establish Special Needs Trust. Neither Elaine nor Lauren were provided any notice or order that the abeyance ended. No such order or notice appears in the FCPC records.

212. On April 23, 2021, JHO Parker contradicted herself regarding the abeyance and without a hearing or informing Lauren or Elaine, reappointed Ashford as Lauren's GAL to "file an answer and report with [the FCPC] within fourteen (14) days" regarding whether the settlement and establishment of a special needs trust as proposed in Jenkins' March 25, 2021 Petition was in Lauren's best interests. Ashford's report was due and her limited appointment automatically terminated on May 7, 2021.

213. Ashford did not file a report or request a new or continued appointment by May 7, 2021, Nonetheless, Ashford, without a court order, continued to act with full authority as Lauren's GAL after May 7, 2021.

214. In May of 2021, Dr. Wright, a neuropsychologist in Missouri, thoroughly tested Lauren and concluded that Lauren did not need a guardian/conservator.

215. On June 10, 2021, Jenkins filed with the FCPC an Adult Conservatorship Inventory, Asset management Plan and Return for the period from May 11, 2020 through May 10, 2021.

a. Jenkins omitted Lauren's workers' compensation claim, valued at over $40,000,000, as an asset. Jenkins had filed a Petition to fully settle and convert Lauren's workers' compensation claim in Tennessee into an irrevocable special needs trust in Florida two months prior, on March 25, 2021.

b. Jenkins disclosed a current bond amount of only $150,000, in violation of Georgia statute that requires that the bond shall be in a value equal to double the estimated

37

value of the ward's estate; provided, however, that the bond shall be in an amount equal to the estimated value of the estate if secured by a licensed commercial surety authorized to transact business in this state. O.C.G.A. §29-5-41(c).

c. Jenkins listed total receipts at $144,383.80, *expenditures of $2,521.58*, with a net cash balance on hand of $141,862.22.

d. During the period May 11, 2020, through May 10, 2021, Jenkins neither petitioned the FCPC for permission to spend any of Lauren's funds nor provided notice to any interested person (Lauren and Elaine) that Jenkins was going to or did spend Lauren's funds, in violation of Georgia statute. O.C.G.A. §29-5-54.

216. On June 26, 2021, Jenkins' and Gorman's 120-day maximum temporary substitute appointments lapsed pursuant to O.C.G.A. §§ 29-4-60(b) and 29-5-100(b) and the terms of the March 25, 2021 FCPC order, entered *nunc pro tunc* to February 26, 2021.

217. On June 26, 2021, Elaine was automatically reinstated as Lauren's guardian and conservator.

**X.    The settlement of Lauren's workers' compensation claim and August 3, 2021 improper suspension of Elaine as Lauren's guardian and conservator *nunc pro tunc* to February 25, 2021.**

218. On July 23, 2021, JHO Parker held a status conference with Jenkins, Gorman, Ashford, and Barringer wherein JHO Parker allegedly provided verbal approval of the settlement of Lauren's workers' compensation claim.

219. However, JHO Parker, Jenkins, Gorman, Ashford, and Barringer all knew, should have known, or otherwise had an obligation to know that Jenkins, Gorman, and Ashford were participating with terminated appointments and had no authority to be in attendance or in possession of Lauren's private and personal information.

220. Ashford—without an appointment as Lauren's GAL—filed a report five days after the July 23, 2021 status conference, on July 28, 2021, wherein she approved the full settlement of Lauren's workers' compensation claim in Tennessee with all proceedings placed in special needs trusts in Florida. Ashford failed and refused to provide her report to Lauren or Elaine. Plaintiffs only obtained this document when they obtained the FCPC court records from the Georgia Court of Appeals in March and April of 2025.

221. The FCPC is devoid of any records wherein Ashford disclosed her substantial conflict of

interest—being paid directly and privately by Ingram/carrier to approve the settlement of Lauren's workers' compensation claim in Tennessee. Ashford was required to divulge her conflict of interest.

222. On August 3, 2021, JHO Parker entered an order reappointing Jenkins and Gorman as Lauren's TSC and TSG, respectively, "effective *Nunc Pro Tunc*, to June 25, 2021."

223. FCPC's JHO Parker offered no rationale, legal or otherwise, for entering the August 3, 2021 effective *nunc pro tunc* to June 25, 2021.

224. It is apparent that JHO Parker did this to provide retroactive cover for the multiple parties acting without any authority and violating Lauren's privacy since at least June 26, 2021—including at the July 23, 2021 status conference where JHO Parker herself participated.

225. The August 3, 2021 Order again required Gorman to report to the court whether it was in Lauren's best interest for Elaine to continue to serve. Again, Gorman failed to file any report.

226. Plaintiffs were never notified or served a petition requesting Jenkins' or Gorman's reappointments. Plaintiffs received partial FCPC court records in late 2022 and did not receive the (purportedly) full FCPC court records until March and April of 2025.

227. Plaintiffs reallege and incorporate the contents of Paragraph 84 above.

228. The August 3, 2021 order was required to be served and notice provided to Lauren and Elaine.

229. The August 3, 2021 Order was entered without service, notice, or an opportunity to be heard to Lauren or Elaine.

230. Elaine was not provided with citation to answer the charges alleging that she should be temporarily suspended as Lauren's guardian and conservator.

231. Plaintiffs were not provided with any opportunity to contest the allegations against them.

232. On August 18, 2021, the Tennessee workers' compensation court held a settlement hearing to fully settle Lauren's workers' compensation claim.

233. Lauren and Elaine were not notified of the hearing.

234. Jenkins, Jeff Roberts, Gorman, Ashford, and Ingram/carrier knew, should have known, or otherwise had an obligation to know that Lauren and Elaine should have received notice of

the August 18, 2021 hearing and be given an opportunity to be heard about decisions regarding Lauren's health and finances at the settlement hearing.

235. On August 18, 2021, Jeff Roberts, as Lauren's purported attorney and/or representative; Jenkins, as Lauren's TSC; Gorman, as Lauren's TSG; and Ingram/carrier signed the settlement agreement.

236. The settlement terms were grossly inadequate.

    a. Lauren's weekly disability rate was determined to end when she could receive old age retirement with Social Security. However, Lauren did not work enough quarters to be eligible for Social Security.

    b. Lauren's weekly disability rate was determined to be approximately $600.00. However, Lauren was entitled to receive the maximum amount available by law, approximately $1,000 per week.

    c. Tennessee workers' compensation law does not allow the settlement of future medicals for individuals that are 100% permanently and totally disabled. Lauren's physicians deemed Lauren 100% totally and permanently disabled. Ingram/carrier and Jenkins, without a medical degree among them, changed the medical determination to 99% disabled so they could proceed with settlement.

    d. Lauren's future medicals were fully settled for just over $1,000 per month for her doctor ordered needs for 24/7 supervision, multiple therapies per week, vision care, broken nose repair, periodic diagnostics with a neurologist and/or neurosurgeon, home modifications, transportation, and assistive equipment, all likely to increase as Lauren ages. Costs at settlement easily exceeded $50,000 per month with hundreds of thousands of dollars of home modifications and equipment that were needed but not provided by Ingram/carrier.

    e. All settlement funds (disability wages and medical) were put in insolvent special needs trusts, chosen by Ingram/carrier in July of 2020 with John Barringer/Manier & Herod credited as the "referring" law firm. Ingram/carrier contacted the SNT as soon as they gained full fiduciary control of Lauren, demonstrating their intent to keep control until Lauren's workers' compensation claim was fully settled.

    f. The alleged TSG, Sharon Gorman, filed an answer in this case's predecessor in January of 2025, and stated she was brought in to be Lauren's guardian until

40

Lauren's financial settlement was resolved and the funds were secured. After the settlement, Gorman saw no reason that Lauren could not terminate the guardianship and conservatorship or that Elaine should not again serve as Lauren's guardian and conservator.

237. On August 24, 2021, and August 25, 2021, the Tennessee court entered settlement orders and attorney fees orders, respectively, without Lauren's or Elaine's knowledge or consent.

238. On August 26, 2021, JHO Parker entered an order approving the Tennessee workers' compensation settlement and establishing special needs trusts.

239. Jenkins appeared in the Tennessee workers' compensation courts through Jeff Roberts, purporting to represent Lauren's interests, claiming authority through the July 17, 2020 temporary letters that were entered without a court order and void.

240. Neither Jenkins nor Jeff Roberts followed Tennessee statutory safety procedural requirements intended to protect Lauren from abuse and exploitation.

    a. A conservator or guardian must register his certified order and letters of office in a county court of Tennessee if said conservator or guardian was appointed in another state and wishes to exercise his powers granted by the other state's court, in Tennessee. TN Code §§ 34-8-401, 402. Jenkins failed to register his orders and letters in Tennessee—and he did not, in fact, have valid orders or letters *to* file.

    b. Jenkins, as an alleged out of state conservator, was required to register with secretary of state in Tennessee and obtain bond. Jenkins did not do so and Lauren was denied the opportunity to be protected from Jenkins.

    c. Jenkins could not proceed in the Tennessee courts without the appointment of an in-state co-fiduciary for Lauren as required by TN Code § 35-50-107. A co-fiduciary could have intervened and provided Lauren protection from the full settlement at pennies on the dollar into an insolvent SNT. Lauren was denied the opportunity for protection from Jenkins.

## XI.   Ingram/carrier's improper establishment of a special needs trust in Florida.

241. The FCPC and the Tennessee Workers' Compensation Bureau allowed Barringer to set up a special needs trust ("SNT") on Lauren's behalf.

242. Barringer facilitated Lauren's SNT in Florida.

243. The SNT was financially insolvent at the time Barringer set up Lauren's SNT.

41

244. On August 6, 2021, Florida attorneys drafted Lauren's SNT at Barringer's direction.

245. On August 9, 2021, Ingrams/carrier paid $3,000 to Florida attorneys to represent Lauren's interests to determine and preserve Lauren's eligibility for public assistance programs and draft/establish/oversee the SNT.

246. Barringer knew or should have known that the SNT was financially insolvent at the time Barringer set it up.

247. Plaintiffs reasonably believe that Barringer has a relationship with the owner, trustees, and/or attorneys for the SNT.

248. Barringer is listed as the "client" and the referring law firm on the SNT documents.

249. Barringer should not have been involved in setting up the SNT. Barringer did not represent Lauren or her conservator and guardian, Elaine. Barringer represented the party opposing Lauren in her workers' compensation claim.

250. Plaintiffs are unsure if Barringer received a referral fee from the SNT.

251. In allegedly settling Lauren's workers' compensation claim in Tennessee and setting up an SNT for Lauren in Florida, Georgia Code Section 29-5-35(i) was violated. Jenkins was required "to petition the court for leave to sell or otherwise deal with the property of the estate only if good cause is shown for not waiting until a different type of conservatorship is created or the conservatorship is terminated."

252. Jenkins failed to petition the court for leave to make such a finding.

253. The FCPC ignored this requirement when it entered its August 26, 2021 order approving the Tennessee workers' compensation settlement and establishment of an SNT.

254. The FCPC was without jurisdiction to enter a settlement order because it did not follow the statutory requirements.

255. The FCPC was also without jurisdiction to enter a settlement order because Lauren is a lifelong Missouri resident, was only in Georgia for months to received acute medical care, and therefore, the FCPC did not have jurisdiction of Lauren's non-Georgia assets. A Tennessee workers' compensation claim is not a Georgia asset.

256. Roberts, Jenkins, and Barringer knew Lauren and Lauren through her conservator and guardian, Elaine, did not consent to the settlement terms.

257. On September 2, 2021, Lauren and Elaine **filed an appeal** to the Superior Court of Fulton County because they discovered the FCPC had again appointed Jenkins and Gorman

without any notice, service, or hearing and had again entered an order on August 3, 2021, *Nunc Pro Tunc* to June 25, 2021, without any legal rationale.

258. The FCPC kept the appeal, did not file it with the Superior Court (as required by Ga. Const. Art. VI § I Para. VIII) and did not communicate with Plaintiffs.

259. On September 13, 2021, Plaintiffs filed a **request to transfer** the guardianship/conservatorship proceedings from the FCPC to the Missouri courts.

    a. At the time, Lauren had been out of Georgia for two (2) years and back in her home, extending her lifelong residency state of Missouri for almost one and one-half years.

260. On September 16, 2021, Lauren and Elaine filed an **appeal to the Superior Court** of Fulton County due to their discovery of the August 26, 2021 FCPC approval of the full settlement of Lauren's workers' compensation claim in Tennessee and the establishment of an *irrevocable* special needs trust in Florida.

261. Again, the FCPC kept the appeal, did not file it with the Superior Court as required by Georgia law, and did not communicate with Elaine or Lauren.

## XII. The October 26, 2021 unlawful suspension of Elaine as Lauren's guardian and conservator, *nunc pro tunc* to October 24, 2021.

262. On September 23, 2021, Jenkins filed a petition with the FCPC to reappoint himself as Lauren's TSC because he wanted defend against (1) Plaintiffs' Motion to Set Aside Orders Approving Settlement Agreement and to Stay All Settlement Proceedings Pending Determination of who had authority as Lauren's guardian/conservator and whether the FCPC's order approving the settlement was upheld; (2) Plaintiffs' appeal of the Tennessee settlement orders; (3) Plaintiffs' Petition to Grant a Provisional Order Allowing Adult Ward to Seek Application in Missouri to Transfer Guardianship and Conservatorship filed with the FCPC; and (4) Plaintiffs' appeal to the Fulton County Superior Court regarding the FCPC's temporary appointments and orders that were entered without following Georgia statutory requirements or providing any due process to Plaintiffs.

263. Plaintiffs were not served or notified of the Order or Jenkins' self-serving petition.

264. Plaintiffs had no opportunity to defend against the allegations contained in Jenkins' petition. Jenkins provided no allegations in his September 23, 2021 petition that Plaintiffs

43

motion, petition, or appeals were not in Lauren's best interests—or any showing or allegation that his purported need to defend against his ward's wishes contained in her motion, petition, and appeals was in Lauren's best interests.

265. On September 30, 2021, Jenkins filed a 50-page document with the FCPC in opposition to the transfer of Lauren's guardianship/conservatorship to Missouri, alleging that Elaine was harming Lauren, that Elaine was putting Lauren in physically dangerous "unauthorized" situations, and that Elaine had been preventing Lauren from obtaining life-saving medical care for over six months. A copy of his report was specifically copied to Ashford and Gorman. Neither an FCPC judge/judicial hearing officer nor one of Lauren's purported fiduciaries (Jenkins, Gorman, Ashford) filed any report with any federal or Missouri authorities, as would have been their obligation if there were any inkling of truth to Jenkins' allegations.

266. On October 26, 2021, the FCPC inexplicably entered another order reappointing Jenkins and Gorman *Nunc Pro Tunc* to October 24, 2021.

267. Judicial Hearing Officer Marian Parker provided no legal rationale for entering another order *Nunc Pro Tunc*.

268. The October 26, 2021 Order again ordered Gorman to report to the Court. This time, the Court ordered Gorman to report whether it was in Lauren's best interest for Elaine, "to continue to hold the title of guardian and conservator, although all of her powers to act have been temporarily suspended." Gorman again failed to file any report.

269. Plaintiffs reallege and incorporate the contents of Paragraph 84 above. The FCPC failed to cite Elaine, to require or allow Elaine to answer the charges and allegations, to investigate the allegations, or to provide Elaine or Lauren with a copy of the order.

270. Jenkins, as the county conservator again failed to obtain separate letters of conservatorship as required by statute. O.C.G.A. §§ 29-8-3 and 29-10-6.

271. On November 8, 2021, Lauren and Elaine filed an **appeal to the Superior Court** of Fulton County regarding the FCPC's October 26, 2021 *nunc pro tunc* order reappointing Jenkins and Gorman and the multiple, consecutive temporary substitute appointments that spanned over 500 days without due process, without a hearing, and against the clear intent of the statute that permits a temporary substitute appointment for a specified period not to exceed 120 days. Each order suspending Elaine and temporarily appointing a substitute

44

guardian and/or conservator stated, "Lauren's best interests required immediate action" and "no hearing is required" without any finding as to what Lauren's best interests were, why immediate action was required or why no hearing was required or how not having a hearing satisfied due process requirements.

272. Jenkins and Ingram/carrier colluded to keep the guardianship/conservatorship with the FCPC until the statute of limitations lapsed in Tennessee for Lauren to appeal the settlement orders to the Supreme Court of Tennessee or to file suit against Jeff Roberts.

273. Between 2021 and 2025, Jenkins filed multiple documents in the Tennessee, Georgia, and Missouri courts to prevent Plaintiffs from setting aside or appealing the settlement orders and underlying orders. He took these actions to protect his own interests, the monies he took from Lauren's funds, the actions he took on Lauren's behalf without lawful authority to do so, and without rational allegations of how any of his actions served Lauren's best interests, or even what those interests were.

274. On January 21, 2022, Jenkins threatened Elaine with criminal prosecution, citing her "signed pleadings in the Georgia courts and the Tennessee courts" and her "unauthorized practice of law in Georgia, Tennessee, and Missouri."

275. On January 6, 2022, Jenkins' time sheet entry states: "Call to John Barringer about appeals date to Supreme Court of Tennessee from order of Worker's Compensation Court; 60 days from final order; discussion of other issues in case; memo to file."

276. On January 20, 2022 (60+ days after the November 18, 2021 remand hearing and 60+ days after the TN WCB re-entered its Settlement Orders *nunc pro tunc*), Jenkins filed a report with the FCPC and withdrew his 50-page opposition to the transfer to Missouri.

277. None of Jenkins' alleged concerns in his 50-page opposition were alleviated.

278. The only change was that the time had lapsed for Lauren to appeal the settlement orders.

**XIII.    Jenkins' ex parte request for over $80,000 of Lauren's money; Judge Johnson's unlawful January 11, 2022 ex parte Order**

279. On November 3, 2021, Jenkins sent a letter directly and only to the FCPC referencing "our conference last week" and enclosing "Proposed Language for Payment of Fees and Expenses to the Temporary Conservator" and his November 2, 2021 invoice including time entries from May 7, 2020 through November 1, 2021. Neither Lauren, Elaine, the alleged TSG (Gorman), nor the alleged GAL (Ashford) were copied, served, or noticed by Jenkins.

45

280. The FCPC records, as provided to the Missouri courts in 2022 or as provided to Plaintiffs by the Georgia Court of Appeals in March and April of 2025, do not include any documents, entries, or notices of any kind regarding a conference in the week prior to November 3, 2021. Neither Elaine nor Lauren are aware of any such conference, who attended, or the subject matter—and they were not notified of any conference.

281. **On January 11, 2022**, FCPC Judge Kenya Johnson entered an ex parte order nearly word for word pursuant to Jenkins' November 3, 2021 proposed language – and also allowed additional fees to Jenkins through December 20, 2021. The FCPC records do not contain any time entries or invoices from Jenkins after November 2, 2021.

282. Neither the FCPC nor Jenkins sent Lauren or Elaine a copy of the January 11, 2022 order. Plaintiffs obtained the order when they finally received the FCPC court records.

283. Jenkins requested compensation and the FCPC entered an order for Jenkins' compensation from Lauren's money in violation of GA Code § 29-5-54. It states, "An emergency conservator or temporary substitute conservator may apply to the court for reasonable compensation **after notice to interested parties** in compliance with Chapter 9 of this title..." Bold added for emphasis.

   a. An "interested party" includes Lauren (the adult ward) and any person who has an interest in Lauren or in the management of Lauren's assets. Because Lauren remained unemancipated and Elaine cared for Lauren and Lauren's horses, Elaine was also an interested person. Lauren nor Elaine was provided any notice by Jenkins whatsoever.

## XIV. Judge Johnson's impermissible and unlawful February 11, 2022 Order.

284. On February 11, 2022, Judge Johnson entered an order dismissing Plaintiffs' three timely filed appeals to the Fulton County Superior Court.

285. The FCPC has no jurisdiction to decide appeals. At the time when Plaintiffs filed their Notices of Appeals in 2021 with the Fulton County Superior Court, the Fulton County Superior Court had that jurisdiction.

286. The FCPC and Judge Kenya Johnson failed to timely send the February 11, 2022 order to Elaine or to Lauren.

287. On February 11, 2022, Judge Johnson entered a provisional order approving the transfer of Lauren's guardianship and conservatorship to the jurisdiction of the Probate Court of St. Charles County, Missouri.

288. The February 11, 2022 provisional order provided Jenkins "limited authority to hold the funds he received as [Lauren's conservator] until adjudication of the case in the state of Missouri or until instructed to release the funds by a court order from the Probate Court of St. Charles County, Missouri."

XV.   **The unsuccessful transfer of Lauren's guardianship/conservatorship to Missouri.**

289. On May 19, 2022, without an order of appointment, Jenkins filed in the Missouri probate courts as Lauren's conservator, requesting the Missouri courts accept transfer of Lauren's guardianship and conservatorship. On May 27, 2022, the Missouri court entered a provisional order accepting the entire transfer pending the FCPC's file and final order terminating Lauren's guardianship/conservatorship in Georgia.

290. On June 9, 2022, the FCPC acknowledged receipt of the Missouri court's provisional acceptance of the transfer, pending receipt of the FCPC's records.

291. On or about August 10, 2022, the FCPC purported to transfer its entire file to the Missouri probate court. Certain documents were omitted (i.e., the February 14, 2020 GAL report that was favorable for Elaine and Lauren).

292. On September 6, 2022, Elaine filed an entry in the Missouri court as Lauren's guardian and conservator.

293. On September 26, 2022, the St. Charles County Probate Court, Missouri held a hearing regarding the transfer of Lauren's conservatorship and guardianship to Missouri.

294. On September 26, 2022, the Missouri court found that Jenkins' and Gorman's temporary appointments had expired by no later than February of 2022, and held that Elaine was Lauren's guardian and conservator. The Missouri court ordered Jenkins to turn over Lauren's assets to Elaine.

295. On September 26, 2022, at the conclusion of the hearing, Elaine and Lauren filed a Joint Petition to restore all rights and to terminate the guardianship and conservatorship.

296. On October 25, 2022, the Missouri court conducted a hearing and terminated Lauren's guardianship and conservatorship by November of 2022.

297. On **January 30, 2023**, Jenkins filed with the FCPC an Adult Conservatorship Inventory, Asset management Plan and Return dated September 26, 2022 for the period from *May 11, 2021, through May 10, 2022.*

    a. Neither Lauren's workers' compensation claim, valued at over $40,000,000 nor Lauren's alleged special needs trusts, valued at over $1,800,000 are listed as assets.

    b. Jenkins discloses a current bond amount of only $150,000, in violation of Georgia statute. O.C.G.A. §29-5-41(c).

    c. As stated above, on February 11, 2022, the FCPC purported to order the provisional transfer of Lauren's guardianship and conservatorship proceeding to the Missouri probate court with specific instructions to Jenkins to hold Lauren's funds pending an order from the Missouri probate court.

    d. On February 11, 2022, Plaintiffs reasonably believe Jenkins was holding $141,862.22 of Lauren's cash funds.

    e. Jenkins listed Lauren's initial cash balance from previous return at $141,862.22, *expenditures of $38,374.61*, with a net cash balance on hand of $103,487.61.

    f. Jenkins neither petitioned the FCPC nor provided notice to interested persons for permission to spend any of Lauren's funds at any time between May 11, 2021, through May 10, 2022—or at any time prior to May 11, 2021—as required by Georgia statute. O.C.G.A. §29-5-54.

298. On **January 30, 2023**, Jenkins also filed with the FCPC an Adult Conservatorship Inventory, Asset management Plan and Return dated *September 26, 2022* for the period from *May 11, 2022, through September 26, 2022.*

    a. Neither Lauren's workers' compensation claim, valued at over $40,000,000, nor Lauren's alleged special needs trusts, valued at over $1,800,000, are listed as assets.

    b. Jenkins disclosed a current bond amount of only $150,000, in violation of Georgia statute. O.C.G.A. §29-5-41(c).

    c. As stated above, on February 11, 2022, the FCPC purported to order the provisional transfer of Lauren's guardianship and conservatorship proceeding to the Missouri probate court with specific instructions to Jenkins to hold Lauren's funds pending an order from the Missouri probate court.

48

    d. Jenkins listed Lauren's initial cash balance from previous return at $103,487.61, *expenditures of $42,250.56*, with a net cash balance on hand of $61,237.05.

    e. Jenkins neither petitioned the FCPC nor provided notice to interested persons for permission to spend any of Lauren's funds at any time between May 11, 2022, through September 26, 2022—or at any time prior to May 11, 2022—as required by Georgia statute. O.C.G.A. §29-5-54.

299. Unbeknownst to Plaintiffs until 2025, the Missouri probate court never had jurisdiction to adjudicate Lauren's guardianship/conservatorship.

    a. On October 21, 2025, the Georgia Court of Appeals declared that, "critically, the [FCPC] never issued a final order terminating [Lauren's] guardianship/conservatorship. [] Absent a final order, the Fulton County probate court retains exclusive and continuing jurisdiction over the proceedings *until it is terminated by the court.*" *In re Estate of Taylor,* 922 S.E.2d 476, 479 (Ga. App. 2025) (emphasis retained).

300. Lauren's guardianship and conservatorship therefore remain pending in the FCPC.

## XVI. Plaintiffs' finally obtain the court records.

301. In March and April of 2025, Plaintiffs finally obtained FCPC's court records for Lauren's guardianship and conservatorship proceedings, but only through Plaintiffs' multiple appeals in the Georgia appellate courts and two writs (December 10, 2024 and February 11, 2025) specifically requesting the Georgia Court of Appeals mandate the FCPC turn over the entire court records as the Record on Appeal.

302. Plaintiffs, after multiple appeals in the Tennessee courts, obtained Tennessee workers' compensation court records in May and October of 2024.

303. Plaintiffs, after a motion and hearing in the Florida federal bankruptcy court, obtained special needs trust documents and communications in January of 2025.

304. Defendants failed and refused to provide Plaintiffs with access to court records, filings, orders, hearings, status conferences, settlement hearings, communications, and even prevented Plaintiffs from accessing Lauren's own medical records in spite of Elaine's and Lauren's numerous requests for these records.

## XVII.  Actions in the FCPC after the Geogia Court of Appeals' disposition.

305. On December 3, 2025, Zurich filed a Counterclaim against Plaintiffs in the FCPC seeking attorney fees, costs, and expenses from the Plaintiffs regarding Plaintiffs' motion to set aside nearly all underlying FCPC orders.

306. On December 8, 2025, due to the prior orders entered by the FCPC without any due process or even one hearing allowed to Plaintiffs, Plaintiffs feared further retribution, bias, and prejudice, and filed a motion to disqualify the FCPC judges and judicial hearing officers that previously participated in Lauren's guardianship and conservatorship.

307. On January 12, 2026, Chief Judge Kenya Johnson disqualified the entire FCPC bench and forwarded that order to Chief Superior Court Judge Ural Glanville.

308. On February 27, 2026, Chief Superior Court Judge Ural Glanville assigned the Honorable Robert C.I. McBurney to preside over Lauren's guardianship/conservatorship case.

COUNT I: BREACH OF FIDUCIARY DUTIES AGAINST DEFENDANTS DANA ASHFORD, AND ASHFORD LAW FIRM, LLC

309. Lauren, for Plaintiffs' First Count against Defendants Dana Ashford, and Ashford Law Firm, LLC state:

310. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 135-308 for Count I.

311. Ashford voluntarily accepted a fiduciary relationship with Lauren.

312. Ashford sought to remain as Lauren's fiduciary/GAL for over two years.

313. Ashford (as Lauren's purported GAL) owed duties of loyalty, candor and care to act in Lauren's (the Ward's) best interests under Georgia law. These duties arise under Georgia Code, Title 29.

314. Ashford breached her duties and went beyond her authority to "investigate and report" to the FCPC when she authorized, assisted, and insisted on Lauren's coerced and unauthorized interstate transport and extra-judicial disposition of assets, self-dealing and conflicted transactions, and by failing to make recommendations to protect and safeguard Lauren and her estate.

315. Ashford took advantage of Lauren and Lauren's medical and financial situation to benefit herself.

316. Ashford's authorization was only "to advise the Court whether or not it is the best interest of (Lauren) to suspend the authority of Elaine Taylor, as Guardian of the Ward as well as Conservator of the Ward[.]"

317. Ashford admittedly "extensively intervened" to force Elaine to take Lauren home without (a) the doctor required 24/7 professional care, supervision, and physical assistance, (b) the needed home modifications, or (c) financial assistance of any kind.

318. Ashford's actions were in lockstep with the Ingrams/carrier's strategy to put their legal and financial obligations to Lauren onto Elaine.

319. Ashford was required to provide a report of her time and fees charged as Lauren's GAL.

320. To date, Ashford has failed and refused to provide any court, Lauren, or Elaine with an accounting of payments received from Ingram/carrier for her alleged role as Lauren's GAL.

321. To date, Ashford has failed and refused to provide Lauren with her own file or court records, causing Plaintiffs to expend significant time and money to obtain them through

appeals and causing significant emotional trauma in not knowing who, how, when, or why lifelong decisions were being made on her behalf.

322. On April 22, 2020, Ashford began a nearly two-and-one-half-year continuous period of time that she claimed full authority as Lauren's GAL while being paid directly and privately by the Ingrams/carrier.

A. The FCPC records, as provided to the Missouri courts in August of 2022, do not contain any extensions of Ashford's February 7, 2020 limited appointment, the April 22, 2020 limited appointment, or the April 23, 2021 fourteen (14) day appointment.

B. Ashford's February 7, 2020 appointment automatically terminated on February 14, 2020—when the FCPC entered an order pursuant to Elaine's motion.

C. Ashford has admitted this to be true.

D. Ashford's April 22, 2020 appointment automatically terminated on July 9, 2020—when the FCPC entered an order pursuant to the Ingram's/carrier's motion to appoint a temporary substitute guardian; Ashford has failed and refused to provide any court order providing authority for her to act as Lauren's GAL from July 9, 2020, through April 23, 2021. No such order appears in the FCPC records as provided to the Georgia Court of Appeals in 2025.

E. Ashford's April 23, 2021 appointment directed Ashford to file a report within fourteen (14) days.

F. The appointment automatically terminated by May 7, 2021.

G. On May 7, 2021, Ashford's answer and report was due to the FCPC, and her appointment terminated. Ashford did not timely file a report but continued to act with full authority as Lauren's GAL without a court order.

H. Ashford failed and refused to provide any court order providing authority for her to act as Lauren's GAL after May 7, 2021. No such order appears in the FCPC records as provided to the Georgia Court of Appeals in 2025.

I. Under the April 22, 2020 and April 23, 2021 appointments above, Ashford claimed full authority as Lauren's GAL continually from April 22, 2020, through September of 2022, when the Missouri courts intervened.

J. Under these two appointments, Ashford claimed full authority as Lauren's GAL for **880** days with appointments that gave her authority for less than **100** days.

K. Ashford accessed Lauren's private medical/financial information and communicated with Barringer, Jenkins, Gorman, Jeff Roberts, Sanger, and the FCPC continually for nearly two and one half years.

L. Ashford failed and refused to provide any reporting or accounting of her fees charged to and received from Ingrams/carrier.

M. O.C.G.A. § 29-9-15 requires the GAL to make reports.

N. The FCPC could not assess and direct payment if it was not provided any documents demonstrating Ashford's work, time, and amount billed to the Ingrams/carrier. *See* O.C.G.A. § 29-9-3.

O. Ashford has refused to provide Lauren or Elaine with an accounting of how much or when she was paid by the Ingrams/carrier, despite multiple requests.

P. Ashford knew of Lauren's regained capacity because she was provided with Dr. Fucetola's and Dr. Wright's evaluations from August of 2020 and May of 2021, respectively.

Q. Ashford not only deliberately ignored the neuropsychological evaluations, but she participated in Dr. Fucetola's and TSG Gorman's refusal to provide Lauren with a copy of her own neuropsychological report in August of 2020.

R. Each of Ashford's appointments were task specific.

S. Under the April 22, 2020 and April 23, 2021 appointments, Ashford greatly exceeded the scope of her specific instructions contained in the orders themselves. Ashford did this to assist the Ingrams/carrier in obtaining their financial goals, i.e., termination of Lauren's benefits and a full settlement of Lauren's Worker's Compensation claim.

323. On July 23, 2021, Ashford—without authority or any valid appointment—participated in a Status Conference with Jenkins (without any valid appointment), Gorman (without any valid appointment), John Barringer (appearing pro hac vice in the FCPC for Ingram/carrier), Jeff Roberts, and JHO Marian Parker, another state actor, wherein the settlement terms for Lauren's workers' compensation claim in Tennessee were purportedly agreed upon. Neither Lauren nor Elaine were given proper notice of the status conference, nor were they allowed to participate.

53

324. On July 28, 2021, Ashford, without authority or appointment, filed a report recommending the settlement of Lauren's workers' compensation claim and the establishment of an irrevocable special needs trust with all of the proceeds.

325. Ashford made no finding that Lauren would need a conservator for her lifetime, as required by Georgia law in establishing a trust for an adult ward.

326. Ashford made no recommendations to account for Lauren's needed ongoing and extensive medical care or living expenses, as required by Georgia law in establishing a trust for an adult ward.

327. Ashford performed no due diligence on the selected special needs trusts wherein all of Lauren's lifelong funds were placed, allowing Ingram/carrier to select the insolvent and now bankrupt institution.

328. Ashford did not provide Lauren or Elaine with a copy of her recommendation.

329. Ashford did not disclose her substantial conflict of interest in rendering her recommendation of the settlement of Lauren's workers' compensation claim (terms offered by Ingram/carrier) in that she had been paid directly and privately unknown amounts for approximately a year and half by Ingram/carrier.

330. Ashford did not treat Lauren with the utmost care, candor, or loyalty.

331. Instead, Ashford took advantage of Lauren and Lauren's situation to better herself.

332. Lauren has been greatly harmed by Ashford's failures and egregious overreaches of authority.

333. While being privately paid by Ingram/carrier and without disclosing the substantial conflict of interest, Ashford recommended (1) Elaine be suspension as Lauren's guardian and conservator and (2) Lauren's workers' compensation settlement.

334. These Ashford recommendations went against Lauren's best interests.

335. Ashford knew, should have known, or otherwise had an obligation to know that her recommendations went against Lauren's best interests.

336. Plaintiffs reasonably assert that Ashford made her recommendations to the FCPC because she was being privately paid by an entity with interests significantly adverse to Lauren.

337. Lauren has not received $0.01 from her Workers' Compensation settlement because Ashford failed to adequately perform her fiduciary duties under Georgia law.

54

WHEREFORE, Plaintiffs pray judgment on Count I be entered against Defendants Dana Ashford and The Ashford Law Firm, LLC, jointly and severally for actual, compensatory, and punitive damages as are fair and reasonable, in excess of THIRTY MILLION ($30,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as this Court shall deem just and equitable.

### COUNT II: BREACH OF FIDUCIARY DUTIES AGAINST DEFENDANTS WILLIAM JENKINS AND JENKINS & ROBERTS LLC

338. Lauren, for Plaintiffs' Second Count against Defendants William Jenkins, and Jenkins & Roberts, LLC state:

339. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 162-308 for Count II.

340. Lauren brings this action against Jenkins under Georgia Code Section 29-5-93.

341. Jenkins voluntarily took on a fiduciary relationship with Lauren.

342. Jenkins sought to remain as Lauren's fiduciary for nearly three (3) years.

343. Jenkins exploited and abused Lauren and Lauren's financial situation to benefit themselves.

344. Jenkins owed Lauren the fiduciary duties of care, loyalty and candor. Jenkins breached all such fiduciary duties.

345. Jenkins was required to (1) maintain sufficient contact, be accessible to, and maintain regular communication with Lauren; (2) provide for Lauren's care, support, education, health; (3) file a report with the FCPC within two months to inventory Lauren's property, and a plan for administering the property; and (4) encourage Lauren to participate in decisions. O.C.G.A. § 29-5-22.

346. Jenkins failed to maintain sufficient contact or be accessible to Lauren at any point.

347. Jenkins deliberately quieted Lauren so that he could keep Lauren's money and settle Lauren's Workers' Compensation case without notifying Lauren.

348. Jenkins failed to provide for Lauren's care and support.

349. All of Lauren's care and support was provided by Elaine because Jenkins failed and refused to do so with her available funds.

350. Jenkins kept all of her available funds so that he could charge for his "time" against all of her money at a later date.

351. On July 17, 2020, Elaine sent Jenkins a letter with a detailed expense statement for Lauren and Lauren's horses, putting Jenkins was "on notice" of Lauren's financial condition.

352. In violation of Georgia Code Sections 29-5-30 and 29-5-23, Jenkins made no accommodations for the expenses of Lauren.

353. Jenkins failed and refused to provide for Lauren's support, care, education, health, and welfare.

354. Jenkins actively discouraged Lauren from participating in decisions and failed to inform her of negotiations, status conferences, settlement conferences, settlement hearings both in the FCPC and the Tennessee workers' compensation courts.

355. Among other things, Jenkins was further required to (1) restore Lauren to capacity at the earliest possible time, (2) utilize Lauren's property for Lauren's support, and (3) have the least restrictive form of conservatorship. O.C.G.A. § 29-5-20.

356. Jenkins knew that Lauren regained capacity to make her own decisions in 2020.

357. Two different neuropsychologists evaluated Lauren (August 6, 2020, and May 10, 2021).

    a. Dr. Fucetola's August 13, 2020 neuropsychological evaluation states,

        > Attention-working memory was within normal limits. . . . [P]roblem-solving abilities were within normal limits. . . . Ms. Taylor performed very well on all . . . measures of executive functioning requiring emotional recognition, abstraction, social comprehension and judgment, and hypothesis testing. Her attention-working memory was normal, as was simple visual perception. (Italics removed.)

    b. Dr. Wright's May 10, 2021 neuropsychological evaluation determined that Lauren, "has decision making capacity" and that she does not require a guardian/conservator.

358. Jenkins was required to restore Lauren to legal capacity.

359. Jenkins deliberately failed to restore Lauren to legal capacity in favor of his own interests and self-dealings.

360. Jenkins did this so he could charge Lauren's funds and settle her workers' compensation claim.

361. Jenkins did not utilize any of Lauren's property for her support, or care for her assets.

362. Jenkins knowingly and purposefully settled Lauren's workers' compensation claim (worth an estimated minimum of $40,000,000 for lifetime medical care and lost wages) for pennies on the dollar.

363. The FCPC records, as transferred to the Missouri court in August of 2022, reveal that Jenkins billed Lauren's estate hourly fees from May 7, 2020, through September 29, 2022, a total of **$107,183.06** against Lauren's initial May 7, 2020, bank account balance of **$107,153.90**. Among his time sheets, Jenkins billed significant hours for multiple members of his firm to eat out for multiple hours while they purportedly discussed Lauren's best interests. He also charged Lauren approximately $6,000 to simply set up a bank account.

364. On November 3, 2021, Jenkins sent an ex parte letter directly to the FCPC referencing "our conference last week" and enclosing "Proposed Language for Payment of Fees and Expenses to the Temporary Conservator" and his November 2, 2021 invoice including time entries from May 7, 2020 through November 1, 2021.

365. Neither Lauren nor Elaine were aware of any such conference, who attended, or the subject matter.

366. On January 11, 2022, FCPC Judge Kenya Johnson entered an ex parte order nearly word for word pursuant to Jenkins' November 3, 2021 proposed language.

367. The FCPC did not send Lauren or Elaine a copy of the January 11, 2022 order.

368. Jenkins did not communicate with Lauren and did not give her the least restrictive form of conservatorship. Instead, he made the conservatorship as restrictive as he could on Lauren.

369. On March 29, 2021, Jenkins, Lauren, and Elaine had a phone conference to discuss the possible settlement of Lauren's workers' compensation claim wherein Elaine inquired about obtaining discovery to ascertain a fair settlement for Lauren.

    a. Jenkins responded, "in doing a settlement, you wouldn't do discovery, Elaine" and "this is not a pending lawsuit, this is a settlement" and "[y]ou know, a little bit of knowledge is really dangerous.  And that's what you have—a little bit" and "you cannot do discovery in the middle of settlement negotiations."

    b. Elaine further inquired, "When there [is] no discovery done, when there was no deposition taken, how do you settle a case like this, based on nothing but what the opposing counsel has given you?"

 c. Jenkins replied, "You know, I'm not gonna [sic] go back and forth about doing discovery during the settlement negotiations. You don't do it."

 d. Elaine again raised specific concerns about the weekly wage Lauren was to receive for her lifetime, as she had done in her June 26, 2020 letter to Jenkins.

 e. Jenkins stated that the weekly rate, "was a determination by the [Tennessee] workers' compensation board."

 f. The board made no such determination.

 g. Elaine requested Jenkins "look at it and let us know where the [weekly rate] number came from and who approved it [and] what was looked at?"

 h. Jenkins: "That is a lot of work!"

 i. Elaine: "Well, exactly. This is the rest of [Lauren's] life. Somebody needs to be putting in a lot of work."

 j. Jenkins: "That is a lot of work."

 k. Elaine: "[Lauren] hasn't gotten a penny, and [the Ingrams/carrier] could be on the hook for up to 20% for penalties for not paying what she should've received this whole last two years."

 l. Jenkins: "Well, if it is that easy to do, then why don't you do it?"

 m. Elaine: "Because I am not the conservator or the guardian or the lawyer."

 n. Jenkins: "You're the one that keeps raising all these questions[.]"

 o. Elaine: "I guess I'm wondering why nobody else is asking these questions on [Lauren's] behalf."

370. Jenkins has claimed to have provided Lauren with her full file from his office.

371. Many documents are not included in Jenkins' full records as provided to Lauren, including his own October 30, 2020 email directly to JHO Caplan at the FCPC and many other documents referenced on Jenkins' time sheets.

372. Jenkins' goal, pursuant to his email to JHO Caplan on October 30, 2020, was to fully settle Lauren's workers' compensation claim.

373. Despite multiple demands by Lauren and Elaine beginning in May of 2020, Jenkins failed and refused to provide Lauren or Elaine with an accounting of how/what/when/if he was charging Lauren's estate. Plaintiffs found out when they finally received the FCPC records.

374. Jenkins failed and refused to require Ingram/carrier to pay for Lauren's necessary expenses or to reimburse Elaine for Lauren's monthly expenses.

375. Jenkins failed and refused to turnover any of Lauren's funds to pay for Lauren's monthly expenses or to reimburse Elaine for Lauren's monthly expenses, despite Elaine's multiple requests.

376. Jenkins was required to maintain an adequate bond in an amount equal to all sums of personal property received on behalf of Lauren. O.C.G.A. § 29-5-100(f).

377. Jenkins only carried a $150,000 bond, far less than the already pitiful purported $1,800,000 Jenkins settled Lauren's case for, all of which was placed at Jenkins' direction into an insolvent special needs trust.

378. Jenkins failed to do any due diligence on the selected special needs trusts, instead relying on Ingram/carrier to select and fund the trusts.

379. Lauren has been greatly harmed by Jenkins' egregious failures.

380. Jenkins improperly settled Lauren's workers' compensation case.

381. Jenkins further improperly placed Lauren's workers' compensation claim's funds into an insolvent SNT.

382. Jenkins violated his fiduciary duty of care to take special precautions on where Lauren's money was to be located.

383. Jenkins violated his fiduciary duty of loyalty by converting Lauren's estate into his assets without her permission or knowledge.

384. Lauren has not received $0.01 from her Workers' Compensation settlement because Jenkins failed to adequately perform their duties.

385. Jenkins took advantage of Lauren and Lauren's situation to better himself.

WHEREFORE, Plaintiffs pray judgment on Count II be entered against Defendants William Jenkins and Jenkins & Roberts, LLC, jointly and severally for actual, compensatory, and punitive damages as are fair and reasonable, in excess of FORTY MILLION DOLLARS ($40,000,000), including the cost of this action, and for whatever other and further relief as this Court shall deem just and equitable.

COUNT III: BREACH OF FIDUCIARY DUTIES AGAINST DEFENDANTS JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, ESIS, INC., PARADIGM, INC., JOHN BARRINGER, M. STEELE CANTEY, AND MANIER & HEROD LLC

386. Lauren for Plaintiffs' Third Count against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, ESIS, Inc., Paradigm, Inc., John Barringer, M. Steele Cantey, and Manier & Herod LLC, state:

387. Plaintiffs reallege and incorporate herein paragraphs 1–308 for Count III.

388. A fiduciary duty exists when a party exercises a controlling influence over the will, conduct, and interest of another. *Bush v. Liberty Mutual Ins. Co.,* 864 S.E.2d 657, 660 (Ga. App. 2021). The law requires the utmost good faith and loyalty of those with fiduciary duties. *Id* at 661.

389. Defendants Ingram/carrier intentionally took on a fiduciary relationship with Lauren by (1) filing to remove Elaine as Lauren's guardian/conservator, (2) staying in Lauren's guardianship/conservatorship case, (3) filing an opposition to Lauren's motion to remove GAL Ashford in Lauren's guardianship/conservatorship case; and (4) hiring attorneys in Florida to represent Lauren and establish Lauren's special needs trust.

390. Ingram/carrier first intentionally exercised a controlling influence over the will and conduct of Lauren when they assisted Shepherd Center in filing a petition to suspend Elaine as Lauren's guardian on October 29, 2019.

391. Ingram/carrier again intentionally exercised a controlling influence over the will and conduct of Lauren when they filed their April 16, 2020 petition in the FCPC to remove Elaine as Lauren's guardian.

392. Ingram/carrier alleged that it brought its April 16, 2020 petition for appointment of a TSG because it was acting in Lauren's best interests with concern for her physical and financial wellbeing. Ingram/carrier specifically alleged that it wanted to forcibly transfer Lauren to another state, Illinois, pursuant to Dr. Kult's orders, and then would restore Lauren's medical care and benefits. Ingram/carrier purported to have suspended Lauren's medical care and benefits on April 14, 2020, but Ingram/carrier did so to create a financial crisis Lauren, blame Elaine for the financial crisis, and have the FCPC suspend Elaine as Lauren's guardian and conservator pursuant their April 16, 2020 petition.

60

393. Ingram/carrier exerted control over Lauren's will, conduct, and interests because it manufactured a crisis in the Tennessee court, so that it could use said manufactured crisis to appoint a TSG, so that it could settle Lauren's workers' compensation case while it controlled Lauren's TSG.

394. Ingram/carrier's exercise of control over Lauren was so extreme that it constituted a fiduciary relationship.

395. Ingram/carrier intentionally paid Lauren's GAL and TSG undisclosed amounts of money to settle Lauren's workers' compensation case.

396. Ingram/carrier wanted to and was allowed to control Lauren's other fiduciaries because of its April 16, 2020 petition.

397. Ingram/carrier became in essence a "master/employer," or "managing partner" of Lauren's GAL, TSG, care, wellbeing, and eventual settlement.

398. Lauren's GAL and TSG in essence became "servants/employees," or "general partners" of Ingram/carrier.

   a. Lauren's GAL and TSG served at Ingram/carrier's whim and were paid accordingly.

399. Finally, Ingram/carrier chose the Florida law firm Staunton & Faglie, P.L., to represent Lauren's interests in Florida.

400. Ingram/carrier paid $3,000 to Staunton & Faglie, P.L., for "[t]he preservation of Lauren Taylor's eligibility for financially tested public assistance programs by drafting and establishing a special needs trust, to include as needed: all consultations and correspondence; oversight of proper trust funding; all communication with the trustee; providing notice of the trust to the Social Security Administration."

401. Ingram/carrier acted in a fiduciary relationship *per se* by choosing and paying for a lawyer to represent Lauren's interests in Florida because it exercised a controlling influence over Lauren's interests and will.

402. In sum, Ingram/carrier took on a fiduciary relationship with Lauren and with Lauren's court-appointed fiduciaries.

403. Ingram/carrier owed Lauren the utmost good faith and loyalty in dealing with her.

404. Ingram/carrier did not show Lauren the utmost good faith in dealing with her.

405. Ingram/carrier paid Lauren's fiduciaries to approve their settlement terms and to settle Lauren's workers' compensation claim. As a result, Lauren received pennies on the dollar from what she should have received.

406. Ingram/carrier had a large conflict of interest to settle Lauren's workers' compensation claim while they were paying Lauren's GAL and TSG.

407. Furthermore, Plaintiffs reasonably believe that Ingram/carrier chose the law firm and SNT in Florida because Defendants Barringer have a relationship with the law firm and the owners and/or trustees of the SNT.

408. Plaintiffs reasonably believe that Ingram/carrier chose the law firm and SNT in Florida because Ingram/carrier received a "kick-back" and/or good will from said law firm and SNT.

409. Ingram/carrier knew, should have known, or otherwise had a fiduciary obligation to know that the SNT was financially insolvent at the time Ingram/carrier set it up on Lauren's behalf.

410. Plaintiffs reasonably believe that Ingram/carrier had a conflict of interest to choose the specific SNT and Florida law firm.

411. Lauren has been placed in a significantly worse position than she otherwise would have been because of Ingram/carrier's involvement.

412. Lauren's settlement was for significantly less than she should have received (without Ingram/carrier's involvement).

413. Lauren has not even seen $0.01 of her paltry settlement because Ingram/carrier placed Lauren's settlement proceeds into an already insolvent SNT.

WHEREFORE, Plaintiffs pray judgment on Count III be entered against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, ESIS, Inc., Paradigm, Inc., John Barringer, M. Steele Cantey, and Manier & Herod LLC, jointly and severally for actual, compensatory, and punitive damages as are fair and reasonable, in excess of FIFTY MILLION ($50,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as this Court shall deem just and equitable.

COUNT IV: ACTION UNDER 42 U.S.C. §§ 1983 AND 1985 AGAINST DEFENDANTS SHEPHERD CENTER, INC., JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., JOHN BARRINGER, AND MANIER & HEROD, LLC, FOR LOSS OF LIBERTY (FALSE IMPRISONMENT) WITHOUT DUE PROCESS OF LAW

414. Elaine, on behalf of Lauren, Adult Ward, for Plaintiffs' Fourth Count against Defendants Shepherd Center, Inc., John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm, Inc., ESIS, Inc., John Barringer, and Manier & Herod, LLC, (Count IV Defendants) state:

415. Plaintiffs reallege paragraphs 1–308 and specifically Paragraphs 49-119 for Count IV.

416. Count IV Defendants, acting under color of state law and/or as willful participants in joint action with state actors, deprived Lauren of liberty (unlawful seizure, restraint, and confinement; privacy violations) and property (workers' compensation disability benefits and funds for needed medical care) without due process of law.

417. The procedures employed were constitutionally deficient, including lack of adequate and timely notice, lack of a meaningful opportunity to be heard, absence of a neutral decisionmaker, lack of lawful jurisdiction, and extra-judicial interstate relocation and asset disposition.

418. Lauren's constitutional rights were violated when Defendants took legal action against Lauren's interests and refused to provide notice or service.

419. FCPC's Judicial Hearing Officer Julie Caplan is a state actor.

420. Georgia Department of Human Services' Advocate, Yvette McAdams, is a state actor.

421. Count IV Defendants are liable under § 1983 as private parties who were willful participants in joint action with state actors, namely JHO Caplan and/or alleged TSG McAdams, to accomplish the unlawful deprivations described in Paragraphs 94-118 and below in Count ???.

422. Lauren has a constitutionally protected right and liberty against unreasonable seizure, restraint, and confinement without due process of law.

423. Lauren has a constitutionally protected right and liberty against abhorrent privacy violations while in her hospital room without due process of law.

424. Lauren has a constitutionally protected right to her property, which she (through Elaine as Lauren's conservator) was deprived of without due process of law.

63

425. Count IV Defendants, with state actors Caplan and/or McAdams, agreed and conspired to deprive the Ward of equal protection and/or equal privileges and immunities by unlawfully keeping her assets (disability benefits and funds for her medical care), preventing her from obtaining needed medical care that she was legally entitled to receive, and restraining and transporting her across state lines without lawful authority or due process, causing injury to person and property.

426. Overt acts in furtherance of included coordination to confine Lauren for physical transport to Nebraska, without a valid court order, and included placing a guard nurse in her hospital room while also video and audio recording Lauren 24/7, without consent and without any due process.

427. Elaine nor Lauren had knowledge that the October 29, 2019 petition had been filed or the November 1, 2019 Order had been entered.

428. On November 19, 2019, Ingram/carrier wanted to and was allowed to forcibly transport Lauren across multiple state lines (Georgia to Nebraska) against Lauren's and Elaine's will and against Lauren's best interests.

429. Shepherd allowed and participated in the forced transfer of Lauren to Nebraska.

430. The November 19, 2019 transfer of Lauren was in violation of Georgia statute and Lauren's and Elaine's constitutional and civil rights because the underlying November 1, 2019 order was entered:
    a. Without a service, notice, or a hearing to Elaine or Lauren pursuant to O.C.G.A. § 29-4-60(e); and
    b. Without emergent medical needs requiring the transfer pursuant to O.C.G.A. § 29-4-60(a).

431. Through JHO Caplan's November 1, 2019 unconstitutional Order and Georgia Department of Human Services' Advocate McAdams purported permission, Defendants confined a fully cognizant Lauren to her hospital room and subsequently forcibly transported her across state lines to QLI in Nebraska.

432. Plaintiffs were not provided with adequate service, notice, or a hearing to contest these matters.

433. Count IV Defendants' purpose was to move Lauren to a step-down facility to save substantial money and avoid liability for their surgeon's botched surgery.

64

434. Count IV Defendants conspired with, confederated with, and joined with the Georgia Department of Human Services' Advocate McAdams and JHO Caplan to deprive Lauren of her liberty to move Lauren, against her will and against her best interests, across state lines. Thus, each of the Defendants acted under color of law.

435. Count IV Defendants purposefully directed their actions against Lauren, a member of a regularly discriminated against group—disabled individuals and severely brain injured individuals.

436. Lauren and her constitutional rights were severely harmed from the actions of Count IV Defendants, Georgia Department of Human Services, and JHO Caplan.

437. Lauren was knowingly confined, videotaped, audiotaped, and recorded in her hospital room at Shepherd against her will, and against her guardian/conservator's (Elaine's) will.

WHEREFORE, Plaintiffs pray judgment on Count IV be entered against Defendants Shepherd Center, Inc., John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, and Manier & Herod, LLC, jointly and severally for actual, compensatory, and punitive damages as are fair and reasonable, in excess of FIVE MILLION ($5,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as this Court shall deem just and equitable.

COUNT V: ACTION UNDER 42 U.S.C. §§ 1983 AND 1985 FOR DEPRIVATION OF PROPERTY (SETTLEMENT OF LAUREN'S WORKERS' COMPENSATION CLAIM) WITHOUT DUE PROCESS OF LAW AGAINST DEFENDANTS WILLIAM JENKINS, BRYNDIS ROBERTS JENKINS & ROBERTS, LLC, JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., DANA ASHFORD, ASHFORD LAW FIRM LLC, JOHN BARRINGER, M. STEELE CANTEY, AND MANIER & HEROD LLC

438. Plaintiffs, for their Fifth Count against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts, LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., Dana Ashford, Ashford Law Firm LLC, John Barringer, M. Steele Cantey, and Manier & Herod LLC, (Count V Defendants) state:

439. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 191-278 for Count V.

440. A cause of action, or claim, is property protected by the Fourteenth Amendment of the United States Constitution.

65

441. Lauren had a property interest in prosecuting her workers' compensation claim.

442. Elaine had a vested legal property right to be Lauren's guardian and conservator.

443. Elaine had a property interest in prosecuting her ward's/unemancipated daughter's workers' compensation claim.

444. Elaine had a property interest in proceeds from Lauren's workers' compensation settlement reasonably attributable as conservator's or guardian's fees.

445. Plaintiffs have a Fourteenth Amendment right to equal protection of the laws and due process.

446. Plaintiffs have a right to be notified of the allegations against them and to be notified prior to the taking of their assets.

447. The FCPC suspended Elaine as Lauren's conservator on May 7, 2020, October 30, 2020, March 25, 2021, August 3, 2021, October 26, 2021, and February 11, 2022 without notice, service or a hearing provided to either Lauren or Elaine—and without any court appointed representation for Lauren.

448. The FCPC suspended Elaine as Lauren's guardian on November 1, 2019, July 9, 2020, October 30, 2020, March 25, 2021, August 3, 2021, and October 26, 2021 without notice, service or a hearing provided to either Lauren or Elaine—and without any court appointed representation for Lauren.

449. Plaintiffs never had an ability to contest the allegations against them or an opportunity to be heard.

450. Defendants knowingly directed their tortious actions against a member of a discriminated against class (disabled individuals)—Lauren.

451. Defendants Jenkins and Ingram/carrier settled Lauren's Workers' Compensation case on August 18, 2021.

452. Plaintiffs were not provided with service or notice of the settlement hearing.

453. Defendants Jenkins, Ingram/carrier, Ashford, and the FCPC judiciary purposefully kept control over Lauren's conservatorship and guardianship until the statute of limitations expired for Plaintiffs to file an appeal in the Tennessee courts, thereby preventing them from filing a timely appeal.

454. Sharon Gorman has stated that she was brought in as Lauren's TSG specifically for the settlement of Lauren's workers' compensation claim and placement of all funds in the SNT.

455. Defendants Ingram/carrier and Ashford conspired with, confederated with, and joined with FCPC County Conservator Jenkins, Judicial Hearing Officers Parker, Koll, and Caplan, Judge Kenya Johnson to deprive Plaintiffs of their property and thus each defendant acted under color of state law.

456. Plaintiffs were forever foreclosed from their constitutionally protected property because of Defendants' actions.

457. Plaintiffs have been severely damaged from Defendants' actions.

458. Count V Defendants settled Lauren's lifetime Workers' Compensation Claim (of both medical and future earnings) for pennies on the dollar of what she should have gotten.

459. Count V Defendants purposefully placed the money they settled Lauren's claim for into a financially insolvent SNT.

460. On February 9, 2024, the special needs trust filed for bankruptcy in federal court in Florida.

461. The special needs trust is irrevocable.

462. Lauren has not seen $0.01 from her SNT.

463. Elaine was required to pull her retirement account to pay for the services that Defendants improperly used the FCPC and TN Bureau to get out of, thereby severely damaging her.

464. Defendants' actions violated Elaine's legal right to be Lauren's guardian and conservator. Defendants' actions improperly prohibited Elaine from rightfully claiming conservator's and guardian's fees.

465. Lauren has been harmed by Count V Defendants' acts described herein.  She has been deprived of her right to appropriate medical care since her injury and for her lifetime. She has been deprived of her right to a fair and just weekly disability benefit since her injury and for her lifetime. She has been deprived of her right to pursue her claims for these rights by the collusive acts of these Defendants with state actors and under color of law.

WHEREFORE, Plaintiffs pray judgment on Count V be entered against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts, LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., Dana Ashford, Ashford Law Firm LLC, John Barringer, M. Steele Cantey, and Manier & Herod LLC, jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of THIRTY

FIVE MILLION ($35,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT VI: ACTION UNDER 42 U.S.C. §§ 1983 AND 1985 FOR DEPRIVATION OF PROPERTY (LAUREN'S MONEY) WITHOUT DUE PROCESS OF LAW AGAINST DEFENDANTS JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., JOHN BARRINGER, M. STEELE CANTEY, MANIER & HEROD, LLC, WILLIAM JENKINS, BRYNDIS ROBERTS, JENKINS & ROBERTS LLC, DANA ASHFORD, AND ASHFORD LAW FIRM LLC

466. Lauren, for Plaintiffs' Sixth Count against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, William Jenkins, Bryndis Roberts, Jenkins & Roberts, LLC, Dana Ashford, and Ashford Law Firm, LLC, (Count VI Defendants) state:

467. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 279-283 for Count VI.

468. Intangible personal property (Lauren's bank account funds) is property protected by the Fourteenth Amendment of the United States Constitution.

469. Plaintiffs have a Fourteenth Amendment right to be notified of the allegations against them.

470. The FCPC suspended Elaine as Lauren's conservator on May 7, 2020, October 30, 2020, March 25, 2021, August 3, 2021, and October 26, 2021 without notice, service or an opportunity to be heard provided to either Lauren or Elaine—and without any court appointed representation for Lauren.

471. The FCPC suspended Elaine as Lauren's guardian on November 1, 2019, July 9, 2020, October 30, 2020, March 25, 2021, August 3, 2021, and October 26, 2021 without notice, service or an opportunity to be heard provided to either Lauren or Elaine—and without any court appointed representation for Lauren.

472. Plaintiffs never had an ability to contest the allegations against them.

473. Jenkins was at all times hereunder Fulton County's County Conservator.

474. Jenkins charged Lauren's estate for time allegedly expended on her behalf from May 7, 2020, through September 26, 2022.

68

475. Jenkins was able to charge Lauren's estate at least in part because of Defendants Ingram/carrier and Ashford's continuous involvement in the FCPC.

476. Jenkins made payments out of Lauren's estate's funds without court order and without notifying Lauren or any other interested persons/parties.

477. Jenkins claimed an interest in Lauren's money by way of temporary appointments.

478. Defendants Ingram/carrier and Ashford conspired with, confederated with, and joined with Judicial Hearing Officers Marian Parker, Barbara Koll, Julie Caplan, and Judge Kenya Johnson, and FCPC county conservator William Jenkins to deprive Plaintiffs of their property and thus each defendant acted under color of state law.

479. Plaintiffs have never been reimbursed from Defendants' unlawful taking of Plaintiffs' funds.

480. Plaintiffs have been severely damaged as a result.

481. Defendants took advantage of Lauren and Lauren's situation to better themselves.

482. Defendants knowingly directed their tortious actions against a member of a discriminated against class (disabled individuals)—Lauren.

483. Because of Defendants' actions, Jenkins took upwards of $100,000 from Lauren's bank account.

WHEREFORE, Plaintiffs pray judgement on Count VI be entered against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, William Jenkins, Bryndis Roberts, Jenkins & Roberts, LLC, Dana Ashford, and Ashford Law Firm, LLC, jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of ONE MILLION ONE HUNDRED THOUSAND ($1,100,000) DOLLARS, including the cost of this action, and for whatever other and further relief as this Court shall deem just and equitable.

COUNT VII: ACTION UNDER 42 U.S.C. § 1983 FOR VIOLATIONS OF LAUREN'S FOURTEENTH AMENDMENT RIGHTS TO PRIVACY IN MEDICAL RECORDS AGAINST DEFENDANTS WILLIAM JENKINS, BRYNDIS ROBERTS, JENKINS & ROBERTS LLC, DANA ASHFORD, ASHFORD LAW FIRM, SHEPHERD CENTER, INC., JOHN BARRINGER, M. STEELE CANTEY, MANIER & HEROD, LLC, ESIS INC., PARADIGM INC., AMERICAN ZURICH INSURANCE COMPANY, JOHN INGRAM, AND JOHN & STEPHANIE INGRAM LLC

484. Elaine, on behalf of Lauren, Adult Ward, for Plaintiffs' Seventh Count against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts LLC, Dana Ashford, Ashford Law Firm, Shepherd Center Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, ESIS Inc., Paradigm Inc., American Zurich Insurance Company, John Ingram, and John & Stephanie Ingram LLC, state:

485. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 162-308 for Count VII.

486. Plaintiffs have a constitutional right to privacy in their own personal information, including medical information about their body.

487. Medical records contain such private information.

488. The Fourteenth Amendment protects individuals from intrusions into their medical records.

489. Further, Congress passed HIPAA to protect individual's medical data. The Department of Health and Human Services provides that: prior to any disclosure, a health provider must: verify the identity and authority of a person requesting protected health information, and obtain any documentation from the person requesting the protected health information when such documentation is a condition of the disclosure under this subpart. C.F.R. § 164.514(h)(1).

490. Ingram/carrier qualify as covered entities and/or business associates under HIPAA. C.F.R. § 160.103.

491. Jenkins, Gorman, and Ashford qualify as business associates under HIPAA. *Id*.

492. Shepherd, QLI, and Dr. Christopher Wolf are health providers under HIPAA. *Id.*

493. Shepherd had an obligation to know the authority of each individual to whom they shared Lauren's information.

494. On April 27, 2020, McAdams reported that both QLI and Ingrams/carrier called her to discuss Lauren, with Ingram/carrier threatening to "pursue guardianship of Ms. Taylor in Tennessee" if they could not coerce Elaine to take Lauren home/Lauren to go home with Elaine (without the 24/7 care, home modifications, etc.).

495. Shepherd failed in their obligations when they supplied information to Yvette McAdams, Jenkins, Gorman, and/or Ashford who had no authority to view Lauren's information.

496. Jenkins was required to obtain additional Letters and Oath each and every time he was reappointed.

497. He failed to do so.

498. The only Letters of Temporary Conservatorship Jenkins utilized between July 17, 2020 and September 26, 2022 were the July 17, 2020 Letters that Jenkins obtained without any court order.

499. Between the dates of July 17, 2020, and September 26, 2022, Jenkins acted without authority in Lauren's Workers' Compensation and Probate cases.

500. Jenkins acted under color of law to settle Lauren's workers' compensation case as he was Fulton County's County Conservator.

501. Jenkins accessed Lauren's private medical information, shared Lauren's private medical information, and made decisions on Lauren's behalf regarding her private medical information.

502. Jenkins had no authority to access Lauren' private medical information but continued to act under color of law as Lauren's temporary substitute conservator and the county conservator.

503. At each point, Sharon Gorman continued to access, share, and make decisions regarding Lauren's private medical information. Gorman had no authority to do so.

504. The above-named Defendants knew, or reasonably should have known, that Gorman did not have authority to access, share, or make decisions on Lauren's behalf.

505. Ashford was only Lauren's Guardian ad Litem from February 7, 2020, through February 14, 2020; April 22, 2020, through July 9, 2020; and from April 23, 2021, through May 7, 2021.

506. These appointments were limited in scope and duration.

507. In spite of this, Ashford acted under color of law as Lauren's "guardian" to access, share, and make decisions regarding Lauren's private medical information.

508. Ashford had no authority to take such actions, but did so anyway.

509. Defendants Ingram/carrier violated Lauren's constitutional right to medical privacy by sharing Lauren's private medical information with people who had no authority to access such information—namely, Gorman and Defendants Jenkins and Ashford.

510. Ingram/carrier knew that Jenkins and Gorman only had authority to act for a maximum of 120 days.

511. Yet Ingram/carrier continued to access and share Lauren's private medical information with Jenkins and Gorman after the 120 days had passed without ever verifying if they had proper authority at any time thereafter.

512. Ingram/carrier knew they were sending Lauren's private medical information to people who had no authority to see such information.

513. Ingram/carrier continued with this practice until after Lauren's Workers' Compensation settlement in August of 2021.

514. Ashford and Ingram/carrier conspired with, confederated with, and joined with Judicial Hearing Officers Caplan, Koll, Parker, Judge Johnson, and county conservator Jenkins to deprive Lauren of her right to medical privacy and thus each defendant acted under color of law.

515. Defendants knowingly directed their tortious actions against a member of a discriminated against class (disabled individuals)—Lauren.

516. Plaintiffs were severely harmed as a result. Lauren's medical information was shared with multiple individuals who had no authority to view that information, use that information, and settle her Workers' Compensation case with that information.

WHEREFORE, Plaintiffs pray judgment on Count VII be entered against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts LLC, Dana Ashford, Ashford Law Firm, Shepherd Center Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, ESIS Inc., Paradigm Inc., American Zurich Insurance Company, John Ingram, and John & Stephanie Ingram LLC, jointly and severally for actual, compensatory damages as are fair and reasonable, in excess of FIVE MILLION ($5,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

72

COUNT VIII: ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., JOHN BARRINGER, MANIER & HEROD LLC, AND SHEPHERD CENTER, INC.

517. Plaintiffs, for their Eighth Count against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, Manier & Herod LLC, and Shepherd Center, Inc., (Count VIII Defendants) state:

518. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 49-122 for Count VIII.

519. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

520. Count VIII Defendants maliciously misused this legal process by:

a. Failing to notify or serve Plaintiffs with the accusations against them.

b. Signing a certificate of service falsely claiming that Elaine was personally served a copy of the October 29, 2019 petition on October 29, 2019.

c. Failing to prepare a citation to Lauren's guardian (Elaine), Lauren's conservator (Elaine), and the Ward (Lauren).

d. Failing to list everyone that is required to be provided with legal representation and/or a Guardian ad Litem (Lauren).

e. Using an *ex parte* petition without an emergent or immediate medical need that required an *ex parte* petition or communication.

f. Using an *ex parte* petition with misleading exhibits and allegations. Defendants failed to inform the FCPC (1) that Defendants mandated Dr. Dennison to discharge Lauren; (2) that Lauren's high pain level and inability to participate in therapies was a direct result of their surgeon's botched surgery; and (3) that Emory Hospital's Dr. Wille's recommendations to best and most quickly alleviate Lauren's pain required Lauren to remain in Atlanta at Shepherd.

73

g. Falsely stating that Lauren was a Tennessee resident to persuade the FCPC to allow Ingram/carrier to administer Lauren's workers' compensation claim in Tennessee.

h. Attaching an exhibit, the October 17, 2019 one-page Tennessee form, without informing the FCPC that (1) the form was meaningless; (2) Lauren, or Elaine on Lauren's behalf, had the right to initiate Lauren's workers' compensation claim in South Carolina, Florida, or Missouri; (3) Plaintiffs did not consent to Tennessee's jurisdiction of Lauren's workers' compensation claim; (4) the Tennessee court had no hearing and made no finding or adjudication as to the validity of Ingram/carrier's October 17, 2019 suspension or assertions on their form claiming that Elaine was not "compliant w/dr's orders." Furthermore, the form is not file-stamped and does not appear in the Tennessee records.

i. Filing an Affidavit of Dr. Dennison and assuring that Dr. Dennison was immediately unavailable to be subpoenaed or cross-examined by Plaintiffs.

521. Count VIII Defendants had improper purpose when it petitioned the FCPC to suspend Elaine as Lauren's guardian because Ingram/carrier wanted to and did save money (between $6,815 and $7,815 per day) by transferring Lauren from Shepherd to QLI.

522. Ingram/carrier did not care about Lauren's best interest.

523. Defendants committed overt acts in furtherance of this misuse of process, including but not limited to ex parte communications, procurement or invocation of void or voidable orders, off-docket directives, and coordination with FCPC's JHO Caplan and Georgia Department of Human Service's McAdams to implement the ulterior objectives, to move Lauren to a step down facility and save money.

524. Count VIII Defendants knowingly, intentionally, and maliciously misused the legal process of the FCPC's guardianship and conservatorship proceeding to suspend Lauren's advocate in order to have a "neutral" TSG appointed that would purportedly allow them to move Lauren to Nebraska and accomplish their ulterior purpose: to delay, deny, and evade liability and responsibility for the improperly placed baclofen pump by their chosen in-house/affiliated neurosurgeon and to save money by suspending Lauren's disability benefits indefinitely and by providing Lauren with less medical care than she needed and was entitled to receive, at significantly less cost.

74

525. Ingram/carrier and Shepherd knowingly and intentionally used the FCPC's process to harm the incapacitated ward—Lauren.

526. On November 8, 2019, according to Shepherd and Ingram/carrier, McAdams gave signed permission for Ingram/carrier and Shepherd to physically force Lauren's transportation to QLI, a step-down facility in Nebraska.

527. On November 19, 2019, Count I Defendants used the November 1, 2019 temporary substitute appointment to gain fiduciary control of Lauren to have the Georgia state worker rubber-stamp their directives—move Lauren to QLI in Nebraska—to further their ulterior and improper purposes to save Ingram/carrier money.

528. Lauren was forcibly transported across state lines without any proper, constitutional procedure. Plaintiffs were severely damaged as a result.

529. Count VIII Defendants, to further their ulterior purpose, caused Lauren severe physical, psychological, and financial harm while also negatively impacting her ability to recover and her recovery trajectory, a result not intended by any process of a guardianship and conservatorship proceeding.

530. Lauren's severe back and tailbone pain was prolonged for five months because Ingram/carrier wanted to save money and avoid liability.

531. Lauren's recovery was stalled and greatly hindered because Ingram/carrier delayed taking out the baclofen pump—causing Lauren to lose out on necessary and timely therapies.

532. Elaine's constitutional rights were violated when she was improperly suspended as Lauren's guardian without notice or service.
   a. Elaine had a vested legal right to be Lauren's guardian.
   b. Ingram/carrier and Shepherd impinged and violated Elaine's legal right to be Lauren's guardian.
   c. Ingram/carrier and Shepherd deliberately and improperly used the process of the FCPC to violate Elaine's legal right to be Lauren's guardian.

533. Lauren's constitutional rights were violated when Defendants took legal action against Lauren's interests without providing her any legal representation whatsoever, and refused to provide notice or service or any opportunity to be heard to Lauren or to Elaine, Lauren's conservator.

WHEREFORE, Plaintiffs pray judgment on Count VIII be entered against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, Manier & Herod LLC, and Shepherd Center Inc. jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of ONE MILLION ($1,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT IX: ACTION FOR ABUSE OF PROCESS (TO COERCE LAUREN HOME WITHOUT DOCTOR ORDERED MEDICAL CARE) AGAINST DEFENDANTS JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., DANA ASHFORD, ASHFORD LAW FIRM LLC, JOHN BARRINGER, M. STEELE CANTEY, AND MANIER & HEROD LLC

534. Plaintiffs, for their Ninth Count against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., Dana Ashford, Ashford Law Firm LLC, John Barringer, M. Steele Cantey and Manier & Herod LLC (Count IX Defendants) state:

535. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 123-153 for Count IX.

536. Count IX Defendants maliciously misused legal process after its issuance, for ulterior and improper purposes not intended by such process. Such misuse proximately caused damages to the Ward and Plaintiff.

537. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

538. In March, 2020, at the beginning of COVID, Ingram/carrier decided to send Lauren home, but did not provide any of the needed equipment, the extensive home modifications, or the 24/7 professional care that Dr. Kult ordered for Lauren's medical care needs at home. Ingram/carrier also had not paid Lauren *any* disability benefits since before October 17, 2019.

539. Elaine refused to bring Lauren home until Dr. Kult's orders were followed and in place for Lauren's safe transition home.

540. On April 16, 2020, under the guise of acting as an interested party and in Lauren's best interests in a fiduciary-type role to Lauren, Ingram/carrier again used the legal process of Lauren's guardianship and conservatorship proceeding and filed a Petition with the FCPC to take fiduciary control of Lauren away from Elaine in favor of a "neutral" guardian/conservator. Ingram/carrier attached an Exhibit, the Affidavit of Dr. Kult, stating that Elaine's home in Missouri was no longer a suitable and safe place for Lauren and he ordered that Lauren be transferred to NeuroRestorative in Carbondale, Illinois.

541. NeuroRestorative is a facility very similar to QLI, except that it offered mainly off-site therapies, which were closed due to COVID. Lauren would not be allowed any visitors, would have no nearby friends or family, and could not transition into a community—it offered essentially none of the requirements that Dr. Kult stated that Lauren needed to continue to recover. QLI and Dr. Kult, like Shepherd Center, were financially incentivized and dependent upon its contractual relationships with Ingram/carrier.

542. Ingram/carrier had no intention of providing Lauren with home modifications or 24/7 home care, nor did Ingram/carrier intend to pay for Lauren's continued medical care at QLI or another facility. Ingram/carrier intended to force Elaine to provide all of Lauren's home medical care, home modifications, equipment, and transportation.

543. Ingram/carrier's ulterior purpose of filing the April 16, 2020 petition and coercive Affidavit of Dr. Kult was to force Elaine to take Lauren home and allow them to save tens of thousands of dollars per month in medical care for Lauren.

544. On April 22, 2020, the FCPC entered a limited appointment for Ashford to investigate and make recommendations to the FCPC regarding whether Elaine should be suspended as Lauren's guardian and conservator.

545. The proper process of a GAL appointment in a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests—not Ingram/carrier's financial interests.

546. Ingram/carrier directly and privately paid Ashford unknown amounts and without disclosures to Plaintiffs or the Court.

547. Ashford immediately threatened Elaine, threatened Lauren, and made crucial medical decisions for Lauren, overriding the requirements and recommendations of Dr. Kult, and arranging for Elaine to take Lauren home, under threat to Elaine and Lauren that Ashford

77

would send Lauren permanently to the Illinois facility, where Lauren would likely not recover well. Elaine took Lauren home, in fear for Lauren's life, on May 2, 2020.

548. Count IX Defendants misused this legal process by:

    a. Failing to notify or serve Plaintiffs with the accusations against them.

    b. Failing to prepare a citation to Lauren's guardian (Elaine), Lauren's conservator (Elaine), and the Ward (Lauren).

    c. Failing to list everyone that is required to be provided with legal representation and/or a Guardian ad Litem (Lauren).

    d. Using an *ex parte* petition without an emergent or immediate medical need that required an *ex parte* petition or communication.

    e. Using an *ex parte* petition with misleading exhibits and allegations.

    f. Falsely stating that Lauren was a Tennessee resident to persuade the FCPC to allow Ingram/carrier to administer Lauren's workers' compensation claim in Tennessee.

    g. Attaching an exhibit, the April 14, 2020 one-page Tennessee form, without informing the FCPC that (1) the form was meaningless; (2) Lauren, or Elaine on Lauren's behalf, had the right to initiate Lauren's workers' compensation claim in South Carolina, Florida, or Missouri; (3) Plaintiffs did not consent to Tennessee's jurisdiction of Lauren's workers' compensation claim; (4) the Tennessee court had no hearing and made no finding or adjudication as to the validity of Ingram/carrier's April 14, 2020 suspension or assertions on their form claiming that Elaine was not "compliant w/dr's orders." Furthermore, the form is not file-stamped and does not appear in the Tennessee records.

549. Ingram/carrier had improper purpose when it petitioned the FCPC to suspend Elaine as Lauren's guardian because Ingram/carrier wanted to and did save money (over $1,185 per day) by transferring Lauren from QLI to her home in Missouri.

550. Ingram/carrier had improper purpose when it petitioned the FCPC to suspend Elaine as Lauren's guardian because Ingram/carrier wanted to and did save money by transferring Lauren home without the necessary home modifications.

    a. Ingram/carrier have failed and refused to provide any support bars in the shower or near toilets, ramps to access the home, wheelchair capable of navigating the gravel

78

driveway, stair support to safely enter/exit the home, stair support to safely access the basement, etc.

551. Ingram/carrier had improper purpose when it petitioned the FCPC to suspend Elaine as Lauren's guardian because Ingram/carrier wanted to and did save money by transferring Lauren home without the necessary professional 24/7 care and supervision.

    a. Ingram/carrier have failed and refused to provide any assistance with the 24/7 care and supervision, therapy assistance, or transportation. This work should have been provided by a professional agency and at Ingram/carrier's expense.

552. Ingram/carrier did not care about Lauren's best interest.

553. Ashford had an improper purpose when she recommended Elaine be suspended as Lauren's guardian and/or conservator because she was accepting payments directly and privately from Ingram/carrier without following proper reporting procedures and statutes.

554. Defendants knowingly, intentionally, and maliciously misused the legal process of the FCPC's guardianship and conservatorship proceeding to suspend Lauren's advocate in order to have a TSG appointed that would purportedly allow them to move Lauren home and accomplish their ulterior purpose: to save money by suspending Lauren's disability benefits indefinitely by providing Lauren with less medical care than she needed and was entitled to receive, at significantly less cost, and to fully settle Lauren's workers' compensation claim for pennies on the dollar.

555. Ingram/carrier knowingly and intentionally used the FCPC's process to harm the incapacitated ward—Lauren.

556. Plaintiffs were severely damaged as a result.

557. Lauren was forcibly transported across state lines without any proper, constitutional procedure.

558. Lauren was forced to do without the necessary doctor ordered therapies, home modifications, and professional 24/7 care. Ingram/carrier were required by Tennessee statute to provide those services to Lauren. When Elaine advocated for Lauren and her medical care needs, Ingram/carrier again retaliated and filed a Petition with the FCPC on April 16, 2020, to suspend Elaine as Lauren's conservator and guardian.

    a. Ingram/carrier have failed and refused to provide any support bars in the shower or near toilets, ramps to access the home, wheelchair capable of navigating the gravel

79

driveway, stair support to safely enter/exit the home, stair support to safely access the basement, etc.

b. These physical and financial responsibilities were put on Elaine with no assistance from Ingrams/carrier whatsoever. Elaine has helped Lauren navigate the stairs, the home, the shower, the toilet, etc.

c. Ingram/carrier have failed and refused to provide the medically authorized 24/7 care and supervision, therapy assistance, or transportation.

d. These physical and financial responsibilities were knowingly put on Elaine with no assistance from the Ingram/carrier whatsoever.

559. Elaine has provided all of the 24/7 care and supervision, therapy assistance, and transportation for Lauren—or Lauren has had to do without.

560. Elaine has been unable to work.

561. Elaine has sustained long-term health problems as a result.

562. Because of the above-named Defendants' actions, Elaine was forced to pull her retirement account to care for Lauren—at great expense.

563. Elaine's constitutional rights were violated when she was improperly suspended as Lauren's guardian without notice or service.

a. Elaine had a vested legal right to be Lauren's guardian.

b. Ingram/carrier and Shepherd impinged and violated Elaine's legal right to be Lauren's guardian.

c. Ingram/carrier and Shepherd deliberately and improperly used the process of the FCPC to violate Elaine's legal right to be Lauren's guardian.

564. As a result of Defendants' actions, Elaine has been unable to work, Elaine has sustained long-term health problems as a result, and Elaine was forced to pull her retirement account to care for Lauren—at great expense.

565. Lauren's constitutional rights were violated when Count IX Defendants took legal action against Lauren's interests and refused to provide notice or service.

566. All of Plaintiffs' damages were reasonably foreseeable by Count IX Defendants.

WHEREFORE, Plaintiffs pray judgment on Count IX be entered against Defendants John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., Dana Ashford, Ashford Law Firm LLC, John Barringer, M. Steele Cantey, and Manier

& Herod LLC jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of TWENTY MILLION ($20,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT X: ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS WILLIAM JENKINS, AND JENKINS & ROBERTS LLC (FOR OBTAINING AND USING VOID TEMPORARY SUBSTITUTE CONSERVATORSHIP LETTERS)

567. Plaintiffs, for their Tenth Count against Defendants William Jenkins and Jenkins & Roberts state:

568. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 178-181 for Count X.

569. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

570. Jenkins improperly used the process of the FCPC when he obtained and utilized additional Letters of Temporary Substitute Conservatorship by:

   a. Using his position as the FCPC county conservator to obtain new temporary letters on July 17, 2020 from the FCPC's clerk without a court order.

   b. Using the void July 17, 2020 temporary letters to unlawfully extend his May 7, 2020 temporary order that ending no later than September 4, 2020, through November 16, 2020 and without a court order allowing him to do that.

571. Jenkins had improper purpose because he wanted to extend his temporary appointment to settle Lauren's Workers' Compensation case and take money from Lauren's bank account.

572. A temporary substitute conservator is supposed to keep the status quo. Neither settling Lauren's workers' compensation claim or taking money from Lauren's bank account was keeping the status quo.

573. Both of Jenkins' reasons were against Lauren's best interest.

574. Lauren and Elaine have been severely harmed as a result.

575. Elaine had a vested legal right to be Lauren's conservator at the time of Jenkins' action. Further, Elaine had a vested legal right to be Lauren's conservator after 120 days had passed from May 7, 2020.

576. Defendants' actions took Elaine's vested legal rights away from her without any notice, service, or citation.

577. William Jenkins used these fraudulently obtained Letters to settle Lauren's Workers' Compensation case in 2021, file oppositions to Lauren's attempts to appeal or set aside the settlement, and to have Lauren's appeals dismissed—all at a severe, lifelong disadvantage to Lauren.

578. Jenkins utilized no other Letters at any time after July 17, 2020.

WHEREFORE, Plaintiffs pray judgment on Count X be entered against Defendants William Jenkins, and Jenkins & Roberts, LLC, jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of TEN MILLION ($10,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT XI: ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS WILLIAM JENKINS, JENKINS & ROBERTS LLC, DANA ASHFORD, AND ASHFORD LAW FIRM LLC (IN OBTAINING THE OCTOBER 30, 2020 ORDER APPOINTING TSC/TSG)

579. Plaintiffs, for their Eleventh Count against Defendants William Jenkins, Jenkins & Roberts LLC, Dana Ashford, and The Ashford Law Firm LLC, state:

580. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 182-190 for Count XI.

581. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

582. Furthermore, the proper process for obtaining a TSC or TSG appointment is by following the steps found in paragraph 84 above.

583. Jenkins maliciously misused the legal process to obtain a TSC or TSG appointment by:

    a. Sending an *ex parte* email to JHO Caplan requesting to be reappointed.

    b. Failing to notify or serve Plaintiffs with the accusations against them.

    c. Failing to prepare a citation to Lauren's guardian (Elaine), Lauren's conservator (Elaine), and the Ward (Lauren).

    d. Failing to list everyone that is required to be provided with legal representation and/or a Guardian ad Litem (Lauren).

    e. Using an *ex parte* email without an emergent or immediate medical need that required an *ex parte* communication.

    f. Using an *ex parte* email without any exhibits or proof of any kind that the drastic action of appointing a TSC or TSG was appropriate.

584. Jenkins had an improper purpose when he requested to be reappointed as Lauren's TSC, because he wanted to settle Lauren's Workers' Compensation claim, and continue to exert control over (take) her monies. He was not an interested person to bring a petition requesting the suspension of Elaine as Lauren's guardian or conservator.

585. Neither are reasons to extend or reappoint a TSC.

586. Ashford improperly used the FCPC when she filed her supplement because the FCPC had given her no authority to file a supplement and she did not serve or notify Plaintiffs.

587. Ashford had an improper purpose when she filed her supplement because she continued to have a conflict of interest—being paid an undisclosed amount of money by Ingram/carrier. Shee was not an interested person to bring a petition requesting the suspension of Elaine as Lauren's guardian or conservator.

588. Plaintiffs were heavily damaged by defendants' actions.

589. Elaine had a vested legal right to be Lauren's guardian and conservator at the time of defendants' actions.

590. Defendants' actions took Elaine's vested legal rights away from her without any notice, service, or citation.

591. Lauren was severely harmed by defendants' actions because they utilized this order to further the improper settlement of Lauren's monies in the Tennessee workers' compensation.

592. Lauren was severely harmed by defendants' actions because Jenkins utilized this order to further pillage Lauren's bank account.

83

WHEREFORE, Plaintiffs pray judgment on Count XI be entered against Defendants William Jenkins, Jenkins & Roberts LLC, Dana Ashford, The Ashford Law Firm LLC, jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of ONE MILLION ($1,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT XII: ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS WILLIAM JENKINS, JENKINS & ROBERTS LLC, JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., JOHN BARRINGER, M. STEELE CANTEY, AND MANIER & HEROD, LLC. (IN OBTAINING THE MARCH 25, 2021 ORDER *NUNC PRO TUNC* TO FEBRUARY 25, 2021 APPOINTING TSC/TSG)

593. Plaintiffs, for their Twelfth Count against Defendants William Jenkins, Jenkins & Roberts LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, M. Steele Cantey, and Manier & Herod, LLC, state:

594. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 190-209 for Count XII.

595. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

596. Jenkins improperly used the process of the FCPC by:

    a. Failing to notify or serve Plaintiffs with the accusations against them.

    b. Failing to prepare a citation to Lauren's guardian (Elaine), Lauren's conservator (Elaine), and the Ward (Lauren).

    c. Failing to list everyone that is required to be provided with legal representation and/or a Guardian ad Litem (Lauren).

    d. Severely misleading the FCPC as to Lauren's benefits.

e.  Having no standing or authorization to negotiate or file any document on Lauren's behalf at the time because his prior (invalid) appointment terminated a month earlier.

597. The specific purpose of a temporary substitute conservatorship is to maintain the status quo and not to make any permanent decisions for the ward.

598. Jenkins had improper purpose because Jenkins wanted to settle Lauren's workers' compensation claim and keep Lauren's money for his firm to charge against until it was depleted.

599. Neither Jenkins settling Lauren's workers' compensation claim nor Jenkins keeping Lauren's money was in Lauren's best interest.

600. Ingram/carrier had an improper purpose when they allegedly filed their form in the Tennessee Bureau, providing it Jenkins to use an exhibit to persuade the FCPC to suspend Elaine as Lauren's guardian and conservator. Ingram/carrier created and manufactured crisis in Lauren's care so that Ingram/carrier and Jenkins could settle Lauren's workers' compensation case to their great advantage.

601. Ingram/carrier wanted to and did save millions of dollars by using their created narrative in the Tennessee settlement. Ingram/carrier would not be able to settle Lauren's claim on their proposed terms with anyone advocating for Lauren's best interests. Ingram/carrier could only settle Lauren's claim on their proposed terms with financially conflicted and self-serving "fiduciaries."

602. Plaintiffs were severely damaged because of Defendants' actions.

603. Lauren's bank account was further pillaged by Jenkins.

604. People without authority were allowed to settle Lauren's workers' compensation claim.

605. Jenkins purposefully settled Lauren's workers' compensation claim at a great disadvantage to Lauren and at a great advantage to Ingram/carrier and himself.

606. Elaine was severely damaged because she could not work and was required to pull her retirement account to pay for the services that Defendants purposefully avoided.

607. Elaine had a vested legal right to be Lauren's guardian and conservator on March 25, 2021.

608. Defendants' actions violated Elaine's legal right to serve as her unemancipated daughter's guardian and conservator, be involved in decisions related to her unemancipated daughter, and to receive conservatorship and guardianship fees.

609. Defendants' actions severely harmed Plaintiffs' rights to service and notice. Their actions further deprived Lauren of a full recovery.

WHEREFORE, Plaintiffs pray judgment on Count XII be entered against Defendants William Jenkins, Jenkins & Roberts LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of ONE MILLION ($1,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT XIII: ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS WILLIAM JENKINS, JENKINS & ROBERTS LLC, JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., DANA ASHFORD, ASHFORD LAW FIRM LLC, JOHN BARRINGER, M. STEELE CANTEY, AND MANIER & HEROD LLC (FOR ACTS LEADING TO THE ORDER APPROVING SETTLEMENT OF LAUREN'S WORKERS' COMPENSATION CLAIM AND ESTABLISH OF SNT)

610. Plaintiffs, for their Thirteenth Count against Defendants William Jenkins, Jenkins & Roberts LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., Dana Ashford, Ashford Law Firm LLC, John Barringer, M. Steele Cantey, and Manier & Herod LLC, state:

611. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 190-278 for Count XIII.

612. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

613. Ingram/carrier, Jenkins, and Ashford all improperly used the FCPC process by,

    a. Failing to notify or serve Plaintiffs with the accusations against them.

86

b. Failing to notify or serve Plaintiffs with the notice of a conference to discuss settlement of Lauren's workers' compensation case.

c. Failing to prepare a citation to Lauren's guardian (Elaine), Lauren's conservator (Elaine), and the Ward (Lauren).

d. Specifically for Jenkins and Ashford, for participating in a settlement conference without any lawful ability to represent Lauren's claims or interests because their appointments had long since expired.

e. Entering a settlement order in contravention of Georgia law.

614. Ingram/carrier, Jenkins, and Ashford, all had improper purpose because they were financially or benefitting from settling Lauren's case at Lauren's expense.

a. Ingram/carrier wanted to and was allowed to save tens of millions of dollars by controlling Lauren's fiduciaries and not giving notice to Lauren or Elaine.

b. Jenkins wanted to and was allowed to pillage tens of thousands of dollars from Lauren's bank account.

c. Ashford wanted to and was allowed to be paid privately and directly by Ingram/carrier for an undisclosed amount for her recommendations.

615. Plaintiffs were severely damaged because of Defendants' actions.

616. Lauren's bank account was further pillaged by Jenkins.

617. People without authority were allowed to settle Lauren's Workers' Compensation claim at pennies on the dollar.

618. Further, Lauren has not received $0.01 due to the purposeful placement of those funds in a financially distraught special needs trust.

619. Jenkins purposefully settled Lauren's workers' compensation claim at a great disadvantage to Lauren and at a great advantage to Ingram/carrier and themselves.

620. Elaine was severely damaged because she could not work and was required to pull her retirement account to pay for the services that Defendants improperly used the FCPC and TN Bureau to get out of.

621. Elaine had a vested legal right to be Lauren's guardian and conservator. Elaine had a vested legal right to any proceeds from Lauren's workers' compensation settlement reasonably attributable as conservatorship fees or guardianship fees.

622. Defendants' actions violated Elaine's legal right to be Lauren's guardian and conservator. Defendants' actions improperly prohibited Elaine from rightfully claiming conservator's and guardian's fees.

623. Defendants caused Lauren a lifetime, catastrophic harm and deprivation of an appropriate settlement in an appropriate forum.

624. Lauren should have received all reasonable medical care, which included doctor prescribed 24/7 professional care and supervision, extensive home modifications, and her lifetime medical care needs resulting from her severe brain injury while working for the Ingrams and being kicked by a horse owned by John Ingram. Plaintiffs attempted, unsuccessfully, to get appropriate care since May 12, 2019, and Lauren has been denied *any* care provided by Ingram/carrier at all since approximately January of 2021, and very little since May 2, 2020.

625. Lauren should have received what she was entitled to under applicable workers' compensation laws as a weekly disability rate. She received substantially less than she was entitled to from May 12, 2019 through October 17, 2019, approximately $10,000, and not one dollar since. Lauren should have received approximately $1,022 per week during the period of time for temporary total disability and approximately $929 per week during the period of time for permanent total disability, which should have been for her lifetime or until she reached old age retirement. The $10,000 she did receive was placed into her bank account and subsequently pillaged by Jenkins, along with donations from family and friends.

WHEREFORE, Plaintiffs pray judgment on Count XIII be entered against Defendants William Jenkins, Jenkins & Roberts LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., Dana Ashford, Ashford Law Firm LLC, John Barringer, M. Steele Cantey, And Manier & Herod, LLC, jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of TEN MILLION ($10,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT XIV: ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS WILLIAM JENKINS, JENKINS & ROBERTS LLC, DANA ASHFORD, ASHFORD LAW FIRM, LLC, JOHN INGRAM, JOHN & STEPHANIE

88

INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., JOHN BARRINGER, M. STEELE CANTEY, AND MANIER & HEROD, LLC. (IN OBTAINING THE AUGUST 3, 2021 ORDER *NUNC PRO TUNC* TO JUNE 25, 2021 APPOINTING TSC/TSG)

626. Plaintiffs, for their Fourteenth Count against Defendants William Jenkins, Jenkins & Roberts LLC, Dana Ashford, Ashford Law Firm, LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, M. Steele Cantey, and Manier & Herod, LLC, state:

627. Plaintiffs reallege and incorporate herein paragraphs 1–308 and specifically Paragraphs 211-231 for Count XII.

628. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

629. Jenkins and Ashford improperly used the process of the FCPC by:

    a. Failing to notify or serve Plaintiffs with the accusations against them.

    b. Failing to prepare a citation to Lauren's guardian (Elaine), Lauren's conservator (Elaine), and the Ward (Lauren).

    c. Failing to list everyone that is required to be provided with legal representation and/or a Guardian ad Litem (Lauren).

    d. Severely misleading the FCPC as to Lauren's benefits and medical care needs.

    e. Having no standing or authorization to negotiate or file any document on Lauren's behalf at the time.

630. The specific purpose of a temporary substitute conservatorship is to maintain the status quo and not to make any permanent decisions for the ward.

631. Jenkins had improper purpose because Jenkins wanted to settle Lauren's workers' compensation claim and keep Lauren's money for his firm to charge against until it was depleted.

632. Neither Jenkins settling Lauren's workers' compensation claim nor Jenkins keeping Lauren's money was in Lauren's best interest.

633. Ingram/carrier had an improper purpose when they allegedly filed documents and attended the status conference to persuade the FCPC to suspend Elaine as Lauren's guardian and conservator long enough to allow them to settle Lauren's workers' compensation claim with Jenkins and Ashford.

634. Ingram/carrier created and manufactured crisis in Lauren's care and finances so that Ingram/carrier and Jenkins and Ashford could settle Lauren's workers' compensation case to their great advantage.

635. Ingram/carrier wanted to and did save millions of dollars by using their created narrative in the Tennessee settlement. Ingram/carrier would not be able to settle Lauren's claim on their proposed terms with anyone advocating for Lauren's best interests. Ingram/carrier could only settle Lauren's claim on their proposed terms with financially conflicted and self-serving "fiduciaries" and the GAL that was financially incentivized by Ingram/carrier to recommend the settlement.

636. The FCP entered the August 3, 2021 order *nunc pro tunc* to June 25, 2021, without any legal rationale, but to provide cover for the defendants that were acting without authority and sharing Lauren's private information with individuals without any authority for months

637. Plaintiffs were severely damaged because of Defendants' actions.

638. People without authority were allowed to settle Lauren's workers' compensation claim.

639. Jenkins purposefully settled Lauren's workers' compensation claim at a great disadvantage to Lauren and at a great advantage to Ingram/carrier and himself—while he did not have any authority to do so.

640. Elaine was severely damaged because she could not work and was required to pull her retirement account to pay for the services that Defendants purposefully avoided.

641. Elaine had a vested legal right to be Lauren's guardian and conservator on July 23, 2021, at the settlement status conference.

642. Defendants' actions violated Elaine's legal right to serve as her unemancipated daughter's guardian and conservator, be involved in decisions related to her unemancipated daughter, and to receive conservatorship and guardianship fees.

643. Defendants' actions severely harmed Plaintiffs' rights to service and notice. Their actions further deprived Lauren of a full recovery, having not received appropriate medical care since early 2021.

90

644. Lauren was continually harmed by not having an advocate acting in her fiduciary roles of guardian, conservator, or Guardian ad Litem—all of which were compromised by Ingram/carrier.

WHEREFORE, Plaintiffs pray judgment on Count XIV be entered against Defendants William Jenkins, Jenkins & Roberts LLC, John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of ONE MILLION ($1,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT XV: ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS WILLIAM JENKINS, BRYNDIS ROBERTS, JENKINS & ROBERTS LLC, AND KENYA JOHNSON (RESULTING FROM JENKINS' SEPT 23, 2021 PETITION AND NOV 1, 2021 EX PARTE LETTER TO FCPC: OCTOBER 26, 2021 ORDER NUNC PRO TUNC TO OCTOBER 24, 2021, JANUARY 11, 2022 ORDER FOR FEES, FEBRUARY 11, 2022 ORDER DISMISSING APPEALS, ALLOWING TSC TO KEEP MONEY INDEFINITELY, PROVISION ORDER TO MISSOURI COURT)

645. Plaintiffs, for their Fifteenth Count against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts LLC, and Kenya Johnson state:

646. Plaintiffs adopt each and every allegation contained in paragraphs 215-46 above.

647. The proper process of a guardianship and conservatorship proceeding in the FCPC is to serve the Ward's best interests, protect the Ward, uphold the Ward's rights, and protect the Ward's property. O.C.G.A. §29-4-20 *et seq.* (Guardian of Adults, Protection of the Ward); O.C.G.A. §29-5-20 *et seq.* (Conservators of Adults, Rights of Wards); O.C.G.A. §29-5-30 *et seq.* (Conservators of Adults, Protection of Property).

648. Jenkins improperly utilized the FCPC when he again filed a petition to suspend Elaine as Lauren's guardian and conservator and be reappointed as Lauren's TSC by

    f.  Failing to notify or serve Plaintiffs with the accusations against them.

    g.  Failing to prepare a citation to Lauren's guardian (Elaine), Lauren's conservator (Elaine), and the Ward (Lauren).

    h.  Failing to list everyone that is required to be provided with legal representation and/or a Guardian ad Litem (Lauren).

649. Jenkins had improper purpose when he requested to be reappointed as Lauren's TSC because he wanted to and was able to stall the Tennessee Workers' Compensation case long enough for the statutes of limitations to have run on Lauren's ability to appeal.

650. Jenkins improperly utilized the FCPC when he filed his 50+ page opposition to the guardianship/conservatorship's transfer, and subsequently withdrew the opposition without any of his underlying claims being alleviated.

651. Jenkins had an improper purpose when he filed and subsequently withdrew his 50+ page opposition to the guardianship/conservatorship's transfer because he exclusively performed such actions to stall the case long enough for the statutes of limitations to have run on Lauren's ability to appeal.

652. Kenya Johnson improperly utilized the otherwise lawful purpose of the FCPC by:

    i.   Dismissing three of Plaintiffs' timely filed appeals to the Fulton County Superior Court.

    j.   The FCPC had no jurisdiction to decide or dismiss Plaintiffs' appeals.

653. Kenya Johnson had improper purpose when she dismissed Plaintiffs' appeals to the Fulton County Superior Court because she wanted to and did prevent Plaintiffs from having the unlawful and unconstitutional August 26, 2021 settlement order challenged. The FCPC judiciary committed egregious actions against Plaintiffs, and Judge Kenya Johnson wanted to and did sweep their actions under the rug for political gain.

654. Plaintiffs were severely damaged because of Defendants' actions.

655. Lauren's bank account was further pillaged by Jenkins and people without authority were allowed to settle her Workers' Compensation claim. Jenkins and Ingram/carrier purposefully kept Lauren's guardianship and conservatorship so that Lauren could not timely file an appeal with the Tennessee Bureau of Workers' Compensation.

656. Elaine was severely damaged because she was required to pull her retirement account to pay for the services that Defendants improperly used the FCPC and TN Bureau to get out of.

657. Elaine had a vested legal right to be Lauren's guardian and conservator. Elaine had a vested legal right to any proceeds from Lauren's workers' compensation settlement reasonably attributable as conservatorship fees or guardianship fees.

658. Defendants' actions violated Elaine's legal right to be Lauren's guardian and conservator. Defendants' actions improperly prohibited Elaine from rightfully claiming conservator's and guardian's fees.

WHEREFORE, Plaintiffs pray judgment on Count XV be entered against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts LLC, and Kenya Johnson jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of ONE MILLION ($1,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT XVI: CONVERSION AGAINST DEFENDANTS WILLIAM JENKINS, BRYNDIS ROBERTS, AND JENKINS & ROBERTS, LLC

659. Plaintiffs, for their Fifteenth Count against Defendants William Jenkins, Bryndis Roberts, and Jenkins & Roberts LLC state:

660. Plaintiffs reallege all allegations contained in paragraphs 13-246 above.

661. Lauren had a right to the money kept in her bank account.

662. Elaine was entitled to hold Lauren's money as Lauren's conservator.

663. Elaine was entitled to payment as Lauren's conservator.

664. William Jenkins availed himself of Lauren's funds continually from May 7, 2020 through September 29, 2022 as Lauren's supposed TSC.

665. William Jenkins claimed authority as Lauren's TSC for **870** consecutive days with 5 temporary, 120 day maximum, substitute appointments (**600** days).

666. Jenkins had no legal right to any of Lauren's monies at any point (from May 7, 2020 through September 29, 2022).

667. Regardless, on September 4, 2020, and on each subsequent expiration and termination of Jenkins' TSC appointment—assuming the validity of the prior temporary appointment—Jenkins failed and refused to turn over Lauren's bank account, funds, documents, legal file, FCPC records, etc., to Elaine or Lauren as required by Georgia Code Section 29-5-102.

668. William Jenkins kept Lauren's money, and financial accounts for at least 270 days, or 9 months, without any legal authority to do so.

669. Jenkins billed Lauren hourly throughout the 870 days (a total of **$107,183.06** against Lauren's initial bank account balance in May of 2020 of **$107,153.90**).

93

670. Jenkins fraudulently misrepresented himself as Lauren's conservator continually from May 7, 2020, through at least September 29, 2022.

671. Both Lauren and Elaine were completely and permanently deprived of their rights to possess and use Lauren's money, and financial accounts to benefit Lauren as a result.

672. Plaintiffs have been severely harmed because of Jenkins' actions.

673. Lauren's money was permanently taken by Defendants and never returned.

674. Elaine was harmed because she was entitled to conservatorship fees, which were taken by William Jenkins without authority to do so.

WHEREFORE, Plaintiffs pray judgment on Count XVI be entered against Defendants William Jenkins, Bryndis Roberts, and Jenkins & Roberts LLC jointly and severally for actual, compensatory, and punitive damages as are fair and reasonable, in excess of THREE HUNDRED THOUSAND ($300,000) DOLLARS, including the cost of this action, and for whatever other and further relief as this Court shall deem just and equitable.

COUNT XVII: ACTION FOR VIOLATIONS OF LAUREN'S RIGHTS TO PRIVACY IN MEDICAL RECORDS AGAINST DEFENDANTS WILLIAM JENKINS, BRYNDIS ROBERTS, JENKINS & ROBERTS LLC, DANA ASHFORD, ASHFORD LAW FIRM, SHEPHERD CENTER INC., JOHN BARRINGER, M. STEELE CANTEY, MANIER & HEROD, LLC, ESIS INC., PARADIGM INC., AMERICAN ZURICH INSURANCE COMPANY, JOHN INGRAM, AND JOHN & STEPHANIE INGRAM LLC

675. Lauren, for Plaintiffs' Sixteenth Count against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts LLC, Dana Ashford, Ashford Law Firm, Shepherd Center Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, ESIS Inc., Paradigm Inc., American Zurich Insurance Company, John Ingram, and John & Stephanie Ingram LLC, state:

676. Plaintiffs reallege all allegations contained in paragraphs 536-68 above.

677. Plaintiffs alternatively allege and state that said named Defendants committed such actions, as to invade Lauren's right to privacy, without the needed admixture of being under color of law.

678. Defendants invaded Lauren's privacy by giving Lauren's medical records to people who had no right to access them.

679. Plaintiffs have been severely harmed as a result.

94

WHEREFORE, Plaintiffs pray judgment on Count XVII be entered against Defendants William Jenkins, Bryndis Roberts, Jenkins & Roberts LLC, Dana Ashford, Ashford Law Firm, Shepherd Center Inc., John Barringer, M. Steele Cantey, Manier & Herod, LLC, ESIS Inc., Paradigm Inc., American Zurich Insurance Company, John Ingram, and John & Stephanie Ingram, LLC, jointly and severally for actual, compensatory damages as are fair and reasonable, in excess of FIVE MILLION ($5,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as to this Court shall deem just and equitable.

COUNT XVIII: ACTION UNDER FALSE IMPRISONMENT AGAINST DEFENDANTS SHEPHERD CENTER, INC., JOHN INGRAM, JOHN & STEPHANIE INGRAM, LLC, AMERICAN ZURICH INSURANCE COMPANY, PARADIGM INC., ESIS INC., JOHN BARRINGER, AND MANIER & HEROD LLC

680. Elaine, on behalf of Lauren, Adult Ward, for Plaintiffs' Seventeenth Count against Defendants Shepherd Center, Inc., John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, and Manier & Herod, LLC, state:

681. Plaintiffs reallege paragraphs 1–300 and specifically Paragraphs 49-110 for Count II.

682. Defendants unlawfully detained and restrained Lauren without legal authority or valid judicial process by arranging, directing, and effectuating her confinement to Shepherd Center from November 8, 2019 through November 19, 2019, and interstate transport to Nebraska on November 19, 2019.

683. Defendants knowingly confined Lauren to her room inside Shepherd Center from November 8, 2019, through November 19, 2019.

684. Lauren was aware of her confinement inside Shepherd grounds and to her room.

685. Defendants' confinement of Lauren to her room inside Shepherd Center was without consent and not otherwise privileged.

686. Defendants' confinement of Lauren to her room inside Shepherd Center from November 8, 2019, through November 19, 2019, included Defendants placing a permanent guard nurse and video and audio recording devices in Lauren's hospital room to confine, monitor, and record her 24/7.

687. Defendants demoralized and damaged Lauren by videotaping and recording her using a bed pan and getting a bed bath while confining her to her bed in her hospital room, unable

95

to cover herself, walk, or otherwise defend and protect herself, but completely aware of the violations being committed against her.

688. Defendants had employees monitor the recordings live in another room at Shepherd. Defendants and unknown employees have copies of these recordings and the ability to disperse without recourse.

689. Defendants listened to and recorded all of Lauren's conversations while confining her to her bed in her hospital room.

690. Defendants' acts of placing a 24/7 nurse guard, videotaping, and audiotaping Lauren while they confined her to her room inside Shepherd Center were without consent and not otherwise privileged.

691. Defendants' confinement of Lauren to her room inside Shepherd Center from November 8, 2019, through November 19, 2019, caused Lauren severe harm.

692. Defendants would not allow Lauren to participate in off-site outings and activities with her friends and family—activities Lauren's treating physician recommended for Lauren's well-being, recovery, and independence. This harmed Lauren's ability to recover and caused her extreme upset and anxiety.

693. Defendants would not allow Lauren to have private conversations with her friends and family, causing Lauren extreme upset and anxiety.

694. Lauren has known since November 8, 2019 as a 19 year old young, vulnerable woman, that there are potentially many individuals that watched and may still have videotapes of her using a bed pan and getting a bed bath, causing Lauren extreme upset and anxiety.

695. Defendants knowingly confined and forced the transportation of Lauren to QLI, a step down facility in Nebraska on November 19, 2019.

696. Lauren was aware of her confinement and forced transport to Nebraska on November 19, 2019.

697. Defendants' confinement and forced transportation of Lauren to Nebraska was without consent.

698. Lauren did not give consent and was opposed to the transfer because she was in excruciating pain that could not be alleviated quickly if she left the Atlanta area.

699. Elaine, as Lauren's conservator, did not give consent.

700. The purported TSC, Georgia Department of Human Services advocate McAdams, did not have the lawful ability to give consent to an interstate transfer.

701. A signed consent by McAdams does not exist in the FCPC court records.

702. A court order allowing the confinement or transfer does not exist in the FCPC court records.

703. Defendants' forced transportation of Lauren from Shepherd Center in Georgia to QLI in Nebraska on November 19, 2019, caused Lauren severe harm.

704. Lauren had to wait, in excruciating pain, to establish a new base line with a new medical team at QLI, before the baclofen medication could begin to be titrated.

705. QLI could only have the baclofen medication titrated once a week or alternating weeks, as opposed to daily at Shepherd, forcing Lauren to wait even longer for the surgery to alleviate her pain.

706. Ingram/carrier were unorganized and delayed establishing and scheduling Lauren with a neurosurgeon in Nebraska to perform Lauren's needed surgery.

707. Ingram/carrier's delays and Defendants' acts in confining Lauren for transport to Nebraska caused Lauren to not be able to fully participate in many more months of time-sensitive therapies due to her pain level.

708. Lauren was aware, fearful, and anxious during her confinement and transportation that she would be stuck in excruciating pain for much longer than if she stayed in the Atlanta area, where she could have quickly had the baclofen titrated and scheduled surgery with Dr. Wille at Emory Hospital.

WHEREFORE, Plaintiffs pray judgment on Count XVIII be entered against Defendants Shepherd Center, Inc., John Ingram, John & Stephanie Ingram, LLC, American Zurich Insurance Company, Paradigm Inc., ESIS Inc., John Barringer, and Manier & Herod, LLC, jointly and severally for actual, compensatory, and punitive damages as are fair and reasonable, in excess of TEN MILLION ($10,000,000) DOLLARS, including the cost of this action, and for whatever other and further relief as this Court shall deem just and equitable.

## DAMAGES

Plaintiff seeks all available relief, including:

Compensatory damages for unlawful detention, loss of liberty, loss of property (including value of workers' compensation claim/proceeds), consequential damages (lost income/appreciation), and/or emotional distress;

Disgorgement, constructive trust, and equitable accounting;

Nominal damages for constitutional violations;

Punitive damages under Georgia law against non-immune Defendants for willful misconduct, malice, fraud, wantonness, or conscious indifference;

Reasonable attorney's fees, conservator's and guardian's fees, expenses, and costs under 42 U.S.C. § 1988 and other applicable law.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable under Fed. R. Civ. P. 38 and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiffs' favor and against Defendants, and award the following relief:

A. A declaration that Defendants violated the Fourteenth Amendment and Georgia law as alleged;

B. All such money damages as are heretofore discussed under each Count and in the Damages section of this Complaint.

## VERIFICATION, CERTIFICATION, and CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I, Elaine Taylor, declare under penalty of perjury that the foregoing is true and correct.

Signed this 19th day of March, 2026, in St. Charles County, Missouri.

Elaine Taylor

Respectfully submitted,
By:   /s/ Elaine Taylor
ELAINE TAYLOR, Conservator and Guardian
For Adult Ward, Lauren Taylor
60 Tahoma Drive
Foristell, MO  63348

By:   /s/ Elaine Taylor
ELAINE TAYLOR,
Individually, Pro se
60 Tahoma Drive
Foristell, MO  63348
(636) 357-3305
boldventure123@gmail.com
rosewood321@icloud.com

**EXHIBIT 1**



## PROBATE COURT OF FULTON COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| IN THE MATTER OF | : | ESTATE NO.    PC-2019-1723 |
| | : | |
| LAUREN M. TAYLOR   , | : | PETITION FOR APPOINTMENT OF A |
| PROPOSED WARD | : | GUARDIAN AND/OR CONSERVATOR FOR |
| | : | A PROPOSED WARD |

### FINAL ORDER

A hearing was held on the above-referenced Petition on September 6, 2019, and after considering the pleadings, the evaluation report and the evidence taken at the hearing, the Court finds as follows:

### FINDINGS OF FACT

1.

All procedural requirements of O.C.G.A. §29-4-11 and O.C.G.A. §29-5-11 have been met. Present at the hearing were: Elaine Taylor ("Petitioner") and her counsel, Laura Akins, Esq.; and Timothy Curtin, Esq., Court-appointed counsel for the Proposed Ward. Co-Petitioner, Marcia Kohler was not present and no other individuals were present.

Petitioner testified that the Proposed Ward was kicked by a horse on May 12, 2019 suffering traumatic brain injury. The injury happened while she was working in Aiken, South Carolina. She was initially treated in Augusta, Georgia but was transported to Shepherd Center in Atlanta, Georgia (Fulton County) where she remains today. At the time she arrived at Shepherd Center, she was between a coma and a persistent vegetative state. She can now speak; is breathing on her own and the trach has been permanently removed. The Proposed Ward has made great strides in her recovery. However, Petitioner testified she gets confused and her short term memory remains poor. The Proposed Ward is not able to manage her medications on her own; could not make a doctor's appointment; and is unable to make responsible decisions regarding her medical treatment. Petitioner stated that the next proposed discharge date for the Proposed Ward is October 10, 2019, but this date continue to move. She has had at least three previous discharge dates.

2.

The above-named Proposed Ward is in need of a guardian by reason of mental impairment. Such need appears to be permanent. Although the Proposed Ward meets the

1

standard for a Conservatorship, at this time, the Court finds that there is no need for appointment of a conservator.

### 3.

The Proposed Ward owns a bank account. Petitioner did not know how much was in the account, but believed it was less than $200.00. The Proposed Ward is receiving Workers' Compensation which is paying her medical bills. Petitioner believes she may also be receiving a monthly check from Workers' Compensation. She will investigate whether or not a Conservatorship is necessary to receive those funds.

### 4.

Petitioners moved the Court to appoint Elaine Taylor to serve as guardian and conservator for the Proposed Ward.

### 5.

No objection to the appointment of a guardian and/or conservator was filed or offered.

### CONCLUSIONS OF LAW

The Court finds, by clear and convincing evidence, that the above-named Proposed Ward (hereinafter referred to as "the Ward") is in need of a guardian because the Ward lacks sufficient capacity to make or communicate significant responsible decisions concerning her health or safety. The duration of the guardianship is permanent.

The Court finds that it is in the best interest of the Ward to appoint Elaine Taylor to serve as Guardian.

Therefore IT IS HEREBY ORDERED that Elaine Taylor is appointed Guardian of the Ward because she is the mother of the Ward; and she has been caring for the Ward. Letters of Guardianship shall issue to such Guardian upon taking the required oath.

IT IS FURTHER ORDERED that due to the appointment of a guardian, this Order REMOVES from the Ward the power to:

a.  Contract marriage;

b.  Make, modify, or terminate other contracts;

c.  Consent to medical treatment;

d.  Establish a residence or dwelling place;

e.  Change domicile;

2

f.      Revoke a revocable trust established by the ward;

g.      Bring or defend any action at law or equity, except an action relating to the guardianship.

IT IS FURTHER ORDERED that a copy of this Order shall be served by first class mail on the Ward; the Ward's attorney; the Guardian; the other Petitioner; and their attorney.

IT IS FURTHER ORDERED that the Ward's legal counsel shall make reasonable efforts to explain to the Ward this Order and the Ward's rights under this Order.

This 6th day of September, 2019.

Julie Caplan
Judicial Hearing Officer
Exercising the jurisdiction of the Probate Court
pursuant to UPCR 3, O.C.G.A. §29-4-12(d)(7),
§29-5-12(d)(7) and §15-9-13(a) and Orders of
the Court dated 3-1-02, 12-10-08 and 9-7-16.

3

Page 49

FILED IN OFFICE
10-21-19
Clerk, Probate Court

EXHIBIT 2

## PROBATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

IN THE MATTER OF                    :     ESTATE NO. PC-2019-1723
                                    :
LAUREN MICAELA TAYLOR,              :
WARD                                :

### ORDER APPOINTING ELAINE M. TAYLOR AS CONSERVATOR

On September 6, 2019, this Court entered an Order, after hearing, appointing Elaine M. Taylor as Guardian for Lauren M. Taylor, Ward. On October 16, 2019, Laura Akins, Esq., counsel for Ms. Taylor, filed a Motion asking that Ms. Taylor be appointed Conservator because Ms. Taylor has now found that the Ward has $200.00 in assets and is unable to access any information from financial institutions regarding the Ward's assets. The Court has reviewed its records. The Court previously found that the Ward met the standard for the appointment of a Conservator and that Ms. Taylor was a suitable person to serve. It appears that the Ward needs a Conservator and it is in the best interest of the Ward to appoint Ms. Taylor as such.

**Now Therefore, It Is Ordered** that Elaine M. Taylor is appointed as Conservator for Lauren Micaela Taylor, Ward. No bond is required at this time. *Provided however, adequate bond shall be posted in an amount equal to all sums of personal property received on behalf of the Ward's estate including any workers compensation benefits received by such Conservator.* The Conservator's oath has already been taken. Accordingly, Letters of Conservatorship shall issue to Elaine M. Taylor.

This 21st day of October, 2019.

Julie Caplan
Judicial Hearing Officer
Exercising the jurisdiction of the Probate
Court pursuant to UPCR 3, O.C.G.A. §§
15-9-13(a), 29-4-12(d)(7), 29-5-12(d)(7) and
Orders of the Court dated 3-1-02, 12-10-08
And 9-7-16.

cc:     Laura Akins, Esq.